**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Paul JONES, Defendant-Appellant.**

No. 83–1638.

United States Court of Appeals, Tenth Circuit.

March 22, 1984.

Jim J. Marquez, U.S. Atty. and Robert S. Streepy, Asst. U.S. Atty., Topeka, Kans., D. Kansas, for plaintiff-appellee.

Michael L. DiCavalcante, Kansas City, Mo., and Scott I. Asner of Kansas City, Kan., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, *Circuit Judge.*

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Jones appeals from his conviction by a jury of conspiring to manufacture and distribute phencyclidine (PCP) in violation of 21 U.S.C. §§ 841, 846.

On January 27, 1983, a complaint was filed before the United States Magistrate charging Jones and a codefendant with conspiracy to manufacture and distribute PCP. Jones was arrested on February 11, 1983, and charged by Information on February 16, 1983. An omnibus hearing and arraignment were held on February 24, 1983, and an indictment was returned by the Federal Grand Jury for the District of Kansas charging Jones and a codefendant with conspiracy to manufacture and distribute PCP.

On April 5, 1983, Jones filed a Motion for Continuance alleging that he had not received discovery materials from the government as ordered by the Omnibus Hearing Report and the district court. The district court, however, denied this motion and the trial commenced on April 11, 1983.

The government presented the testimony of seven witnesses. The first witness, Michael Hultgren, testified that he and Jones planned to set up a PCP lab (Tr. 24), that they bought materials for this lab (Tr. 26–31), and that they began to manufacture PCP (Tr. 30–31). Hultgren stated that he left the Kansas City area because he began to be troubled by the drug manufacturing (Tr. 32). Later, he contacted the Drug Enforcement Administration (DEA) and cooperated with that agency by tape-recording an incriminating telephone conversation he had with Jones (Tr. 33). This tape was introduced into evidence during the trial (Tr. 35).

Gary Stroble also testified for the government. He stated that he had discussions with Jones about the PCP lab, that he (Stroble) agreed to sell the PCP manufactured by the lab (Tr. 88), and that later he in fact sold a batch of PCP from the lab (Tr. 90–92).

Four witnesses testified for the government that they had been involved in selling either chemicals or lab glassware to the co-conspirators at the time the lab was being set up.

Finally, as its last witness, the government called Terry DalCason. DalCason, a chemist with the DEA explained how PCP could be manufactured (Tr. 145–46), and how several of the chemicals purchased by Hultgren would be necessary for this process (Tr. 147a).

On appeal, Jones makes several allegations of error. First, he claims that the district court abused its discretion by denying his Motion for a Continuance. Second, he argues that the court erroneously admitted the tape recording of the telephone conversation between Hultgren and Jones. Third, he asserts that the jury's verdict is not supported by substantial evidence. Finally, he claims that various comments made by the district judge were prejudicial to him and warrant reversal. We hold, however, that the above arguments are individually and collectively without merit and therefore affirm.

## I.

*The Motion for a Continuance:* The Omnibus Hearing Report provided, *inter alia*, for the exchange of the names of witnesses ten days before trial. Six days before trial, Jones filed his motion on the basis of the government's failure to provide him with the names of its witnesses, particularly the name of the government's informant, Hultgren. Jones asserted that this failure on the government's part materially prejudiced him because it left him little time to investigate the witnesses. The district court, however, disagreed and denied the motion.

■ The decision to grant or deny a Motion for Continuance is within the discretion of the trial court. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964). There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. *Id.* The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Id.*

In the present case, the circumstances confronting the district court included several significant facts. First, the government disclosed on March 16, 1983, some twenty-six days before trial, "a transcript of an alleged [recorded telephone] conversation between Jones and a person identified as S17800037"; a review of this transcript by Jones would have certainly revealed that Hultgren was S17800037. Second, there is no indication that Jones ever *requested* the names of the witnesses from the government; instead he waited until six days before trial and then filed his Motion for a Continuance. Certainly, information should be requested as a matter of course before a party petitions the court for relief because of a failure to produce that information. *See, e.g.,* Fed.R.Crim. Proc. 16(a) (discovery achieved upon the *request* of the parties). Finally, the Omnibus Hearing Report ordered an *exchange* of witness lists ten days before trial. There is no indication that Jones gave the government a list of his witnesses, or a memorandum stating that he would call no witnesses. Hence, the government's failure to produce a witness list was matched by a similar omission on the part of Jones.

■ The circumstances mentioned above suggest that the district court acted well within its discretion by denying Jones' motion. Even had this denial constituted error, it would not have been reversible absent a showing that the error was prejudicial to the substantial rights of the defendant. *Mullins v. United States,* 487 F.2d 581, 589 (8th Cir.1973). Jones has not met this burden. He has not pointed to specific

information that he was unable to obtain owing to the government's delay. Nor has he shown that he was materially handicapped in his cross-examination of the government's witnesses.[1]

## II.

*Admission of Tape Recording:* Jones argues that the government did not establish the proper foundation required for the introduction of the tape-recorded telephone conversation between Hultgren and Jones. He relies on *United States v. Lipowski,* 423 F.Supp. 864 (D.N.J.1976), and *United States v. McKeever,* 169 F.Supp. 426 (S.D. N.Y.1958), which set out seven factors that must be shown to establish a foundation for the introduction of sound recordings.[2]

■ This court, however, has specifically rejected the adoption of "inflexible [foundation] criteria applicable to all cases." *United States v. Smith,* 692 F.2d 693, 698 (10th Cir.1982). We recognize that the factors set out in *McKeever* and *Lipowski* may assist a trial judge in ruling upon foundation questions, but we will not upset the judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording. *See Id.; also generally,* Louisell and Mueller, 5 *Federal Evidence* § 516 (1981).

■ We are convinced that the government's foundation was sufficient. Under the government's questioning, Hultgren testified that he consented to tape the phone call (Tr. 36), that he called Jones (Tr. 33), that he personally recorded the conversation (Tr. 33), that the tape played in court was the tape he recorded (Tr. 34), and that the voices on the tape were his own and Jones' (Tr. 36). The accuracy of the recording is insured further by Hultgren's familiarity with Jones and Jones' voice. Ideally, there should have been testimony concerning the control of the tape after it was recorded, but, considering the presence of the aforementioned indicia of accuracy, we find that this deficiency was not fatal.

## III.

*Sufficiency of the Evidence:* Jones next argues that there was insufficient evidence to support the jury's verdict. He claims that the government's only direct evidence of conspiracy came from the testimony of the co-conspirators, Hultgren and Stroble. This testimony, according to Jones, must be discounted because of Stroble's drug problems and Hultgren's alleged perjury.

■ Perjury may be defined as knowingly and willfully giving false testimony relating to a material matter. *United States v. Marcello,* 436 F.2d 1221, 1225 (5th Cir.1971). Due process will not tolerate a conviction obtained by perjured testimony. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

In support of this serious charge that Hultgren "lied to the jury," Jones provides alleged inconsistencies in Hultgren's testimony. Hultgren testified that he had not engaged in drug manufacturing after June 3, 1980. Jones, however, argues that Government Exhibit #2, a receipt for chemicals purchased by Hultgren, is dated June 10, 1980—thus "proving" Hultgren lied about when he stopped manufacturing drugs.

1. In support of his Motion for Continuance, Jones stated on April 7, 1983 (five days before trial) that he believed the government's confidential informant resided in Michigan and that the informant might have a criminal record in Louisiana requiring investigation. This information, in fact, related to Hultgren and perhaps a continuance would have facilitated its complete disclosure. However, this information would not have benefited Jones at trial because Hultgren's criminal record consisted only of two misdemeanor offenses—offenses which could not have been used for impeachment on cross-examination. *See* Fed.R.Evid. 609(a).

2. Those factors are; (1) That the recording device was capable of taking the conversation now offered in evidence; (2) that the operator of the device was competent to operate the device; (3) that the recording is authentic and correct; (4) that changes, additions or deletions have not been made in the recording; (5) that the recording has been preserved; (6) that the speakers are identified; and (7) that the conversation was made voluntarily, in good faith, without inducement. *United States v. McKeever,* 169 F.Supp. at 430.

■ If Jones' argument proves anything, it proves that receipts can be read differently by different people. We have reviewed Government Exhibit # 2. In our view, the receipt is dated "4/10," not "6/10." A charge of perjury should certainly contain more basis than an unclear date on a receipt. Jones' evidence of perjury amounts to no more than an attack on Hultgren's character and credibility. These matters are to be considered by the jury, not by appellate courts. *United States v. Dennett,* 551 F.2d 261, 262 (10th Cir.1977). We hold a similar view of Jones' attack of Stroble's testimony. Stroble's drug addiction was a factor to be considered by the jury in assessing his credibility.

After independently reviewing the record, we hold that the evidence is more than adequate to support the jury's verdict.

### IV.

■ *Comments of the District Judge:* Jones argues that the district judge unfairly prejudiced his case by questioning and thereby "rehabilitating" government witness DalCason after cross-examination. We note that Jones made no objection in this regard at trial. Absent any such objection, there is no error when the trial judge questions a witness unless such inquiry creates plain error. *Barba-Reyes v. United States,* 387 F.2d 91, 93 (9th Cir. 1967). We have reviewed the district judge's questioning of DalCason and are convinced that his purpose was not to ridicule Jones' attorney or to strengthen the government's case, but merely to clarify DalCason's testimony. Such efforts should be encouraged.

> It cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or of a moderator at a town meeting. He or she sits to see that justice is done in the cases ... and to see that a case on trial is presented in such way as to be understood by the jury .... [A federal trial judge] should not hesitate to ask questions for the purpose of develop-

ing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other. *Simon v. United States,* 123 F.2d 80, 83 (4th Cir.1941). *See also Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1154 (10th Cir.1978); *United States v. Wheeler,* 444 F.2d 385, 390 (10th Cir.1971).

■ Finally, Jones contends that the district judge unfairly prejudiced him by informing the jury prior to their retiring to deliberate that they should first pick a foreman and then go to lunch. This, argues Jones, destroyed the impact of his closing argument which suggested to the jury that they should "send a message" to the government by "returning a not guilty verdict in exactly twenty minutes." Obviously, Jones points out, the jury could not follow his suggestion if they dined before deliberating.

Considering that it was 12:30 p.m. before the court concluded reading the instructions to the jury, we find that it was reasonable for the judge to send the jury to lunch. Jones cites no authority indicating that counsel's closing argument should in any way restrain the district judge's discretionary power to set lunchtime. Far be it from us to create such unhealthy precedent.

AFFIRMED.