**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Gregory R. HALL, a/k/a Don Cusick,
Defendant–Appellee.**

No. 93–3183.

United States Court of Appeals,
Tenth Circuit.

March 30, 1994.

David M. Lind (Randall K. Rathbun, U.S. Atty., Kim M. Fowler, Asst. U.S. Atty., on the brief), Asst. U.S. Atty., D. Kan., Wichita, KS, for plaintiff-appellant.

Daniel E. Monnat of Monnat & Spurrier, Wichita, KS, for defendant-appellee.

Before LOGAN, BRORBY, Circuit Judges, and SEAY, District Judge.*

SEAY, District Judge.

The government appeals the district court's pretrial dismissal of Count V of a third superseding indictment charging Gregory R. Hall, a/k/a Don Cusick, with having knowingly used or carried a Glock 17 semi-automatic pistol during and in relation to a drug trafficking offense, namely, a conspiracy to possess cocaine with intent to distribute, in violation of 18 U.S.C. § 924(c)(1). In seeking the reversal of the district court's order and the reinstatement of Count V, the government argues the following: 1) the district court was without jurisdiction to grant a pretrial dismissal of Count V on the basis of insufficiency of the evidence, and 2) even assuming the court had jurisdiction, there was sufficient evidence to submit Count V to a jury. Appellate jurisdiction is properly invoked pursuant to 18 U.S.C. § 3731. We affirm.

### I.

On August 31, 1992, law enforcement officers assigned to monitor a Federal Express location in Los Angeles, California, observed a suspicious package addressed to a Don Cusick, 7635 W. 11th Street, Wichita, Kansas. After a narcotics detection dog confirmed the officers' suspicions by "alerting" to the package, agents of the Drug Enforcement Administration ("DEA") in Wichita were contacted and a federal search warrant was obtained to search the package upon its arrival in Wichita. The agents found approximately 1,500 grams of white powder inside the package. A field test was conducted and the powder tested positive for cocaine.

A controlled delivery to the Wichita address took place on September 1, 1992. This address was the residence of Hall and his wife, Paula Hall. At approximately 1:45 p.m. a DEA agent posing as a Federal Express employee delivered the package. The package was accepted by Paula Hall on behalf of the addressee, Don Cusick. Shortly thereafter, a federal search warrant for the residence was issued by a magistrate judge. DEA and local law enforcement agents returned to execute the search warrant at approximately 2:05 p.m. Paula Hall was arrested immediately. The agents conducted their search of the tri-level residence which consisted of a family room in the lower level; a living room, dining room and kitchen on the main floor; and two bedrooms and a bathroom in the upper level. The Federal Express package was found unopened on top of the refrigerator in the kitchen. The fully loaded Glock 17 semi-automatic pistol which is the subject of Count V was found on the top shelf in the closet of the upstairs master bedroom.[1] Drug paraphernalia and residual cocaine powder were found on the main floor and garage, but were not found in the master bedroom. Cash was found in the master bedroom and the lower level: $300 in a purse on the dresser in the master bedroom; $1,310 in a dresser drawer in the master

---

* The Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

1. At the hearing before the district court, Agent Jeffrey Pike, detective with the Wichita Police Department, testified as to the facts surrounding the search including the existence of other firearms in the residence. Approximately fifteen unloaded "long guns" were in a locked closet in the music room on the lower level; a Springfield Armory .45 caliber semi-automatic pistol was also in the master bedroom closet; and a handgun was in one of the upper kitchen cabinets. None of these firearms form any part of the charge in Count V and the government does not raise on appeal an "armed fortress" theory where several guns are found throughout a house in strategic locations for possible use in an emergency. *See United States v. Matra,* 841 F.2d 837 (8th Cir.1988). Hall had a federal firearms license which permitted him to possess all the firearms, including the Glock 17.

bedroom; and $12,000 in the music room in the lower level.

Hall was not present when the package was delivered or during the search of the residence. Hall was in flight from Los Angeles to Wichita, through Dallas–Fort Worth, Texas. When Hall arrived at his residence at approximately 6:30 p.m. he was arrested by DEA agents in the living room just a few feet from the front door.

The charge which is the subject of this appeal first appeared as Count V of the superseding indictment filed on October 21, 1992. In Count V, the government alleged:

> [o]n or about September 1, 1992, in the District of Kansas, Gregory R. Hall, a/k/a Don Cusick, did use or carry a firearm, that is, a Glock 17 semiautomatic pistol ... in relation to a drug trafficking offense, namely the possession of cocaine with the intent to distribute ... in violation of 18 U.S.C. § 924(c).

Hall filed a motion for a bill of particulars in relation to Count V and the government responded by stating that through discovery it had provided Hall with all the facts surrounding the offense. In reply, Hall moved the court to dismiss Count V on the basis that, as a matter of law, the government's evidence was insufficient to establish a § 924(c)(1) violation. On December 28, 1992, the court conducted an evidentiary hearing on the motion to dismiss as well as several other motions, including a motion to suppress. Defense counsel presented evidence with respect to both the motion to dismiss and the motion to suppress. The government did not object to the presentation of evidence in relation to the motion to dismiss. In fact, the government consistently acknowledged throughout the proceedings concerning Hall's motion to dismiss that the facts surrounding Count V were not in dispute. Following the hearing, the government filed a second superseding indictment on January 12, 1993, which changed the predicate offense for Count V to conspiracy to attempt to possess cocaine with intent to distribute. Again, Hall moved to dismiss Count V. On February 22, 1993, the court granted Hall's motion. The court held that a submissible section 924(c)(1) case is not established

where the facts only establish that a gun was found somewhere in the house. Thereafter, on March 24, 1993, the government filed a third superseding indictment changing the predicate offense for Count V to conspiracy to possess cocaine with intent to distribute. Once again, Hall moved to dismiss Count V. The court directed the government to file a bill of particulars with respect to Count V. The government's bill of particulars presented no new facts. On June 8, 1993, the court entered its order dismissing Count V of the third superseding indictment. The court incorporated its previous order of February 22, 1993, and reiterated its finding that "the present charge rests solely on the presence of the pistol somewhere in the defendant's house." It is from this June 8, 1993, order dismissing Count V of the third superseding indictment that the government appeals.

## II.

On appeal, the government first contends that the trial court erred in dismissing Count V prior to trial. The government claims the court's dismissal of Count V based on the insufficiency of the evidence was an improper determination of Hall's innocence made before the issue was put to trial before the trier of fact. Simply stated, the government challenges the trial court's jurisdiction to dismiss Count V on a pretrial motion to dismiss.

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a]ny defense, objection, or request which is capable of determination without trial of the general issue may be raised before trial by motion." In its disposition of a Rule 12(b) motion, the court is allowed to consider factual issues. In this respect, Rule 12(e) provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." The government contends, however, that the trial court cannot make findings of fact on the "general issue" of the sufficiency of Count V. It is claimed that the procedure utilized by the trial court in making findings of fact in connection with the motion to dismiss is at odds with the standard for reviewing the sufficiency of an indictment.

An indictment is deemed constitutionally sufficient if it (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Walker,* 947 F.2d 1439, 1441 (10th Cir.1991). Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion. *United States v. King,* 581 F.2d 800, 802 (10th Cir.1978). An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–75, 9 L.Ed.2d 136 (1962). Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency.

Notwithstanding these general principles, this circuit has upheld a pretrial dismissal under Rule 12(b) based on the insufficiency of the evidence where the underlying facts were essentially undisputed and the government failed to object to the district court's resort to evidence beyond the four corners of the indictment. In *United States v. Brown,* 925 F.2d 1301 (10th Cir.1991), we affirmed the district court's pretrial dismissal of three counts of violations of the National Stolen Property Act, 18 U.S.C. §§ 2314 and 2315, on the basis that the allegedly stolen property, a computer program in source code form, was not covered under the statutory protection for goods, wares or merchandise. In dismissing the count, the district court did not rely solely on the allegations on the face of the indictment, but rather, it conducted an evidentiary hearing during which both the government and the defendant presented witnesses. The government also introduced one exhibit at the hearing. On appeal, we found no procedural error in the district court's handling of the motion to dismiss and we affirmed the dismissal. We determined that in circumstances like those before the district court, "it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case." *Id.* at 1304. We also noted that the government's failure to object to the district court's consideration of evidence outside the indictment until the filing of its appellate reply brief rendered its procedural objection untimely. *Id.*[2]

A more recent decision, *United States v. Wood,* 6 F.3d 692 (10th Cir.1993), lends additional support for the proposition that under certain circumstances a trial court is within its jurisdiction in ordering a pretrial dismissal based on the insufficiency of the evidence. In *Wood,* we affirmed the district court's pretrial dismissal of an indictment alleging making false statements to an FBI agent, in violation of 18 U.S.C. § 1001, and obstruction of justice, in violation of 18 U.S.C. § 1503. As to the § 1001 charge, the district court held that the statements made by defendant to the FBI were made when the FBI agents were acting under the auspices of the Phoenix, Arizona, grand jury and, therefore, defendant's statements were part of a judicial proceeding entitling defendant to protection from liability under the "judicial function" exemption of § 1001. In making this finding, the district court relied, in part, on extrinsic evidence in the form of a grand jury subpoena duces tecum served on defendant for business records for the grand jury's investigation. As to the § 1503 charge, the district court found that the false statements made

---

**2.** In upholding the district court's pretrial dismissal in *Brown,* we referenced the Seventh Circuit's decision in *United States v. Risk,* 843 F.2d 1059 (7th Cir.1988). Risk was charged with violations of failing to file Currency Transaction Reports for transactions involving more than $10,000, in violation of 31 U.S.C. §§ 5313 and 5322, 31 C.F.R. Part 103 and 18 U.S.C. § 2. In moving to dismiss these charges, Risk attached discovery documents which had previously been presented to the grand jury that had indicted him. In its response, the government did not object to the submission of these documents. The district court relied on these documents in dismissing the charges against Risk. The Seventh Circuit upheld the dismissals based on the undisputed facts and the failure of the government to timely object.

by defendant to the FBI would not as a natural and probable consequence impede the due administration of justice as required for a violation of § 1503. The dismissal of these charges resulted from fact findings made by the district court. Consequently, our affirmance of the district court's dismissals in *Wood* is an implicit recognition of a district court's authority, under certain limited circumstances, to go beyond the allegations of the indictment and make predicate findings of fact.

■ Although we recognize that the preferred approach in testing the sufficiency of an indictment cautions against consideration of the strengths and weaknesses of the government's case through fact-finding pretrial hearings, *King*, 581 F.2d at 801–02, we read *Brown* and *Wood* as authority which allows a district court to dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case. Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt. We note, however, that such a scenario is not likely to recur and we caution both the trial courts and counsel that the procedure here employed is indeed the rare exception.

Here, the government did not dispute the facts surrounding the section 924(c)(1) charge. In fact, the government did not take the position before the district court, and does not contend on appeal, that it has additional evidence to support the charge. Furthermore, at the December 28, 1992, evidentiary hearing, government counsel did not object to the testimony of Agent Pike nor the introduction of a photograph of the closet of the master bedroom where the Glock 17 was found or the floor plan of Hall's residence.[3]

Under these limited circumstances, we find no procedural error in the district court's handling of the motion to dismiss.

## III.

■ We now turn to the government's challenge to the substantive ruling of the district court in dismissing Count V. Because the district court's ruling was a legal determination based on its interpretation of section 924(c)(1) and relevant case law, we review de novo. *Wood*, 6 F.3d at 694.

The government claims there was sufficient evidence to establish the requisite nexus between the Glock 17 and the drug trafficking offense of conspiracy to possess with intent to distribute cocaine. The government points to the drugs, drug paraphernalia and cash scattered throughout the house as evidence of a drug storage, processing and distribution operation. Because there is evidence of a drug trafficking offense taking place at Hall's residence, the government concludes that the presence of the Glock 17 in the upstairs master bedroom closet permits the inference that the firearm is being "used" to safeguard the drug operation.[4] In essence, the government would have this court adopt an inference of liability under section 924(c)(1) whenever a firearm is found in a residence which is being used in connection with a drug trafficking offense. We decline to do so and conclude that the government must do more than point to the presence of a firearm in a residence to establish its "use" for purposes of section 924(c)(1).

Section 924(c)(1) provides in relevant part, "[w]hoever, during or in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years ...." In this circuit, we have held that a defendant "uses" a firearm for purposes of section 924(c)(1) when the firearm (1) is

---

3. It is true that in its argument to the district court the government consistently contended that the evaluation of Count V was a fact question for the jury. This argument, however, concerned the sufficiency of the evidence. It was not a jurisdictional argument addressing itself to the

propriety of the district court's procedural handling of the motion.

4. The government does not contend that the evidence would support a conviction for "carrying" a firearm in violation of section 924(c)(1).

readily accessible, (2) is an integral part of the criminal undertaking, and (3) increases the likelihood that the criminal undertaking would succeed. *United States v. Conner,* 972 F.2d 1172, 1173–74 (10th Cir.1992); *United States v. Matthews,* 942 F.2d 779, 783 (10th Cir.1991); *United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989).

■ As to the "readily accessible" element, the government is required to show that "the firearm was available to the defendant in the vicinity where the drug trafficking offense took place." *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991). We have upheld convictions under section 924(c)(1) where the evidence established a physical proximity between the firearm and the defendant, or the firearm and the drugs. *United States v. Coslet,* 987 F.2d 1493, 1495–96 (10th Cir.1993) (defendant arrested in isolated marijuana field and a loaded shotgun was found in partially opened gun case of defendant's car); *Conner,* 972 F.2d at 1173–74 (10th Cir.1992) (rifle hanging directly above location of drugs and, on separate occasion, the defendant pointed a sawed-off shotgun at agent); *United States v. Hager,* 969 F.2d 883, 888–89 (10th Cir.) (gun kept in boot in living room of apartment where large amounts of cocaine found), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992); *United States v. Abreu,* 962 F.2d 1425, 1431–32 (10th Cir.1992) (firearms found in defendant's bedroom in the same apartment where cocaine mixture stored); *Parrish,* 925 F.2d at 1297–99 (10th Cir.1991) (loaded pistol found on shelf of bedroom closet within reach of the defendant who was hiding in closet; small amount of cocaine also found in closet); *United States v. Bullock,* 914 F.2d 1413, 1415–17 (10th Cir.1990) (in house where amphetamine manufacturing and distribution taking place, the defendant found sitting on a bed with a loaded shotgun a few feet away and holding a baggie of amphetamine in his hand); *McKinnell,* 888 F.2d at 674–75 (10th Cir.1989) (loaded gun found in passenger compartment of defendant's vehicle under large opaque plastic bag containing cocaine and currency).

We have not, however, declared that ready access can be established under circumstances similar to those present herein: (1) a firearm is found on the top shelf of a closet in a bedroom on the top floor of a tri-level house; (2) only a relatively small amount of cash is found in the bedroom; (3) no drugs or drug paraphernalia are found in the bedroom; (4) the controlled delivery package containing cocaine was located on top of the refrigerator on the main level of the house and small traces of cocaine were found on the main floor and in the garage; (5) the defendant was not at the house when it was searched and he was arrested on the main level when he arrived; (6) there is no evidence of any prior linkage between the defendant and any firearm or drugs. By arguing for a submissible section 924(c)(1) case under these facts, the government is, in effect, advocating a shift of the critical inquiry from the "proximity" of the firearm in relation to the defendant or the drugs to the mere "presence" of a firearm in an area where drug activities are taking place. We decline to so extend the reach of section 924(c)(1). The record fails to establish any linkage between Hall and the firearm or the firearm and the drugs. All the government has proven is that the firearm was present in Hall's residence. This is insufficient to prove that Hall had ready access to the firearm.

Moreover, as to the second factor for a "use" conviction under section 924(c)(1), we find no evidence the Glock 17 formed an integral part of Hall's criminal activity in the sense that Hall intended the firearm to be available for use to further the conspiracy. In evaluating this second factor, we have utilized the standard set out by the court in *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2nd Cir.1988). After noting that mere possession of a firearm is insufficient under section 924(c)(1), the court in *Feliz–Cordero* focused on the necessary relation between the firearm and the underlying crime and held that a firearm is an integral part of a drug trafficking offense under the following circumstances:

i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or

ii) The circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located as to be quickly and easily available for use during such transaction.

Again, we note that Hall was not present at the residence when the firearms, drugs and drug paraphernalia were found. He was not in possession of the Glock 17 on the date in question. There is no evidence that drug transactions were taking place in the bedroom where the Glock 17 was found. Furthermore, we agree with the district court's conclusion that the firearm was not strategically located, but was "hidden away in an inconvenient location." Under these circumstances, we can only conclude, as the district court did, that "[t]here is utterly no proof that this gun was used at any time, for any reason, in any way related to the traffic of narcotics" or that defendant intended for it to be available for use. *See Matthews*, 942 F.2d at 783–84 (guns not an integral part of defendant's criminal activity where defendant arrived at coconspirator's apartment the night before the raid by police, defendant did not handle the guns, and defendant played no role in securing the guns); *Feliz–Cordero*, 859 F.2d at 254 (presence of loaded gun in dresser drawer in same bedroom where drug paraphernalia found was insufficient to establish an intent to use the gun to further the drug transaction). Consequently, we conclude the evidence was insufficient to establish that the Glock 17 was an integral part of Hall's criminal undertaking.[5]

We affirm the district court's dismissal.

---

**5.** To the extent the government seeks to extend liability to Hall based on the acts of Paula Hall, his wife and coconspirator, under a vicarious liability theory, *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), we simply note that the facts are likewise insuffi-

cient to establish any "use" by Paula Hall. *See United States v. Gillis*, 942 F.2d 707, 711 (10th Cir.1991) and *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993) (application of *Pinkerton* theory to section 924(c)(1) charges).