UNITED STATES of America, Plaintiff,

v.

Brandon J. SMITH, and David
E. Vernon, Defendants.

Crim. A. Nos. 93–10092–01, 93–10092–02.

United States District Court,
D. Kansas.

July 22, 1994.

Kenneth G. Gale, Focht, Hughey & Calvert, Wichita, KS, Jeff L. Griffith, Griffith & Griffith, Derby, KS, Steven K. Gradert, Office of Federal Public Defender, Wichita, KS, David J. Phillips, Topeka, KS, for defendant Brandon J. Smith.

Roger L. Falk, Law Office of Roger L. Falk, Wichita, KS, for defendant David E. Vernon.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant Brandon J. Smith's motion for judgment of acquittal on Count III of the indictment (Doc. 93), and defendant David E. Vernon's motion for judgment of acquittal or, in the alternative, for a new trial (Doc. 94).

Defendants were charged, in a three-count indictment, with committing the following crimes: (1) conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a) and 846; (2) possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a); and (3) using or carrying a firearm in the course of a "drug trafficking crime" in violation of 18 U.S.C. § 924(c). The case was tried to a jury. At the close of the government's case, defendants moved for a judgment of acquittal. The court granted that motion in part, finding insufficient evidence to prove beyond a reasonable doubt that either defendant was guilty of the conspiracy charges in Count I.

In connection with Counts II and III, both defendants requested and the jury was given an instruction on the lesser included offense of simple possession of crack cocaine, 21 U.S.C. § 844(a). The jury was instructed that if they found either defendant not guilty with respect to the charge of possession with intent to distribute or were unable to reach a verdict with respect to that charge, then they should consider whether the defendant was guilty of the lesser included offense of simple possession. (Doc. 83, Inst. 16). The jury was further instructed that because the term "drug trafficking crime" within the meaning of 18 U.S.C. § 924(c) includes only felonies, they could not find a defendant guilty of the firearms charges in Count III unless they also found him guilty of either possession with intent to distribute or simple possession of **more than five grams** of crack cocaine, both of which are punishable by imprisonment for more than one year. (Inst. 19). *See* 21 U.S.C. § 844(a), sentence three; 18 U.S.C. § 1(1).

The jury ultimately found defendant Smith guilty of the crimes charged in Counts II and III, possession with intent to distribute and use of a firearm in connection with a drug trafficking offense. However, the jury found defendant Vernon guilty only of the lesser included offense of simple possession of crack cocaine, in an amount of less than five grams.[1]

### STANDARDS FOR ACQUITTAL AND NEW TRIAL

Under Federal Rule of Criminal Procedure 29(c), "[i]f a verdict of guilty is returned the court may on [a motion for judgment of acquittal] set aside the verdict and enter judgment of acquittal." In ruling on a motion of acquittal, "the court must consider all direct and circumstantial evidence that was presented in this case and the inferences that may reasonably be drawn from that evidence in the light most favorable to the government." *United States v. Urena*, 834 F.Supp. 1282, 1284 (D.Kan.1993), *aff'd*, 27 F.3d 1487 (10th Cir.1994) (citing *United States v. Young*, 954 F.2d 614, 616 (10th Cir.1992)); *United States v. Batt*, 811 F.Supp. 625, 625 (D.Kan.1993) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987)). The court may enter a judgment of acquittal "only if the evidence is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982).

Defendant Vernon alternatively seeks a new trial. The court may grant a motion for

---

**1.** On the verdict form, the jury actually indicated that it had found Vernon "not guilty" of the charges in Count III. This corresponds with the court's instruction that, if a defendant was found guilty of mere simple possession and not possession with intent to distribute, he must have been in possession of more than five grams in order to be found guilty of the charges in Count III.

**1468**

new trial "if required in the interest of justice." Fed.R.Crim.P. 33. "A motion for new trial 'is not regarded with favor and is granted only with great caution, being addressed to the sound discretion of the trial court.'" *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987) (quoting *United States v. Allen*, 554 F.2d 398, 403 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977)); *see Urena*, 834 F.Supp. at 1285; *Batt*, 811 F.Supp. at 626.

### *Defendant Smith's Motion for Acquittal*

Smith seeks acquittal on his conviction under Count III, claiming there was insufficient evidence for the jury to find beyond a reasonable doubt that he was using or carrying a firearm during or in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). He does not challenge the conviction under Count II.

■ The standard for reviewing the sufficiency of evidence on criminal convictions is whether a reasonable jury could find the defendant guilty beyond a reasonable doubt given the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom, when viewed in the light most favorable to the government. *United States v. Holland*, 10 F.3d 696, 699 (10th Cir.1993), *cert. denied*, *Kelly v. U.S.*, — U.S. ——, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994) (evaluating sufficiency of evidence in a § 924(c) case).

In this case, the jury was instructed that, in order for either defendant to be found guilty of a violation of § 924(c), the government had to prove beyond a reasonable doubt that the defendant had knowingly used or carried a firearm during and in relation to a drug trafficking crime. (Inst. 18). The jury was further instructed, in accordance with Tenth Circuit case law, that

> A defendant "uses" a firearm when it (1) is readily accessible, (2) is an integral part of the criminal undertaking, and (3) increases the likelihood of success for that undertaking. The government is not required to show that a defendant actually displayed or fired the weapon to prove

"use." However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of the drug offense charged.

(Inst. 20). *See United States v. Hall*, 20 F.3d 1084, 1088–89 (10th Cir.1994) (citing *United States v. Conner*, 972 F.2d 1172, 1173–74 (10th Cir.1992); *United States v. Matthews*, 942 F.2d 779, 783 (10th Cir.1991); and *United States v. McKinnell*, 888 F.2d 669, 675 (10th Cir.1989)).

Smith contends that the government failed to prove beyond a reasonable doubt elements (2) and (3) in instruction 20. According to Smith, there was no evidence that the weapons found at his home were an integral part of or increased the likelihood of the criminal undertaking. Rather, Smith contends, the evidence showed that he owned and possessed the firearms found in order to protect himself from gang members in his neighborhood. Citing the Tenth Circuit's recent decision in *Hall, supra*, Smith argues that the government did not produce evidence of a nexus between the alleged drug trafficking offense and the firearms and that no nexus can be inferred from the mere presence of the firearms at the scene.

■ The evidence adduced at trial showed that, after being tipped off by a confidential informant and obtaining a warrant, officers conducted a search of a home owned by defendant Smith, found cash, drugs, drug paraphernalia, and numerous firearms on the premises, searched a number of occupants at the home (there were at least ten), and arrested some of the occupants, including Smith and Vernon. Drugs and over $600 in cash were found on Smith's person, and guns, scales, ziplock baggies, and a pager were found in the room in which Smith was located. Three of the firearms found by police were registered to and owned by defendant Smith, and these were received as exhibits at trial: an Intratec .22 caliber semiautomatic handgun; a Spectre HC 9mm semi-automatic handgun; and a KBI Model GKK–92C 9mm handgun.

Officer Terry Fettke, who orchestrated the raid on Smith's home, testified that he had interviewed Smith at the police station after

twice advising Smith of his rights. Most of the interview was taped. According to Fettke, Smith had indicated the firearms were present at his house in case he encountered difficulties during drug exchanges, but he also claimed to have had "run ins" with members of a local rival gang (the Vato Loco Boys or VLBs) and that he had to keep the guns for his protection. Smith conceded, however, that he had purchased the guns several months before moving into the neighborhood inhabited by the VLBs.

Smith himself also testified at trial and admitted that he owned the three guns found by the police and received into evidence.[2] Smith denied, however, using or carrying the guns in connection with drugs, claiming instead that the firearms provided him protection from the VLBs. Evidence was presented concerning Smith's own involvement in a gang (the Cash Money Gangsters or CMGs) and his alleged past confrontations with the VLBs. With respect to his post-arrest conversation with Officer Fettke, Smith maintained that he told Fettke the guns were present for his protection. A tape of Fettke's conversation with Smith was played for the jury and entered into evidence. (Ex. 16).

In the end, the jury obviously did not buy Mr. Smith's story that the guns found at his home were intended to be used solely for his protection against the VLBs. The jury instead found from the circumstances surrounding Smith's arrest and from the other evidence presented that the guns were being used to facilitate his possession and distribution of crack cocaine. Viewing the evidence in a light most favorable to the government, the court concludes that the jury's finding was reasonable and well-supported. The sheer circumstances alone are almost overwhelming. The defendant owned a home that can reasonably be characterized as a "drughouse" filled with all the makings of a substantial local drug operation: groups of young people gathered, many of them taking or possessing drugs and carrying weapons; marijuana, cocaine, and large amounts of cash; a vast array of readily accessible, loaded firearms; scales to weigh drugs on and ziplock baggies to separate out certain amounts and store them; and a pager with which to maintain covert communications with suppliers and buyers. Although Mr. Smith may indeed have intended to use his guns to protect himself from the VLBs, the circumstances give every indication that he also kept those weapons and used them in order to facilitate his drug operations.

In this aspect, the present case is easily distinguishable from *Hall.* There the Tenth Circuit upheld Judge Kelly's pretrial dismissal of § 924(c) charges where the prospective evidence showed only that:

(1) a firearm is found on the top shelf of a closet in a bedroom on the top floor of a tri-level house; (2) only a relatively small amount of cash is found in the bedroom; (3) no drugs or drug paraphernalia are found in the bedroom; (4) the controlled delivery package containing cocaine was located on top of the refrigerator on the main level of the house and small traces of cocaine were found on the main floor and in the garage; (5) the defendant was not at the house when it was searched and he was arrested on the main level when he arrived; (6) there is no evidence of any prior linkage between the defendant and any firearm or drugs.

*Hall,* 20 F.3d at 1089. The court found insufficient evidence that firearms were an "integral part" of the criminal undertaking because the defendant was not present when the firearms, drugs, and paraphernalia were found, he did not have the gun in his possession, there was no evidence that drug transactions were taking place in the bedroom where the gun was found, and the gun was not strategically located. *Id.* at 1090. By contrast, at the time of Smith's arrest, he was in the presence of firearms, drugs, and

---

**2.** With respect to the drugs, scales and pager, Smith claimed:

(1) that the officers found money only, not drugs, on his person;

(2) that the scales were used for weighing jewelry, not drugs; and

(3) that he owned the pager so his mother, who cleaned houses, could get in touch with him when she needed assistance, not to aid him in the distribution of drugs.

various tools of the drug trade, such as scales, baggies, and a pager. In these types of circumstances, the Tenth Circuit has gone so far as to "presume" a nexus between the firearm and the drug trafficking offense. *Holland,* 10 F.3d at 699.

Clearly, the evidence in the present case lent itself to a legitimate inference that the defendant was using guns to facilitate in the possession and distribution of drugs. Defendant Smith's motion for acquittal is accordingly denied.

### Defendant Vernon's Motion for Acquittal or New Trial

Defendant Vernon seeks acquittal or, in the alternative, a new trial on his sole conviction for the lesser included offense of simple possession. Vernon asserts three bases for his motion: (1) the evidence produced at trial was not legally sufficient to support his conviction; (2) the trial court erred in vigorously cross-examining him before the jury; and (3) the trial court erred in denying his pretrial and mid-trial motions to sever.

### A. *Sufficiency of the evidence*

The evidence adduced with respect to defendant Vernon, including his own testimony, revealed that prior to his arrest, he was in the southeast bedroom in defendant Smith's house smoking marijuana and shooting dice. He heard glass break in the kitchen, and police entered the house. When the police first discovered Vernon, he was leaning over a baby's crib under which a baggie containing approximately three grams of crack cocaine and a key belonging to Vernon were later found.[3] Officer Fettke searched Vernon and, in Vernon's pants pockets, found $305.00 in cash and a plastic baggie containing a small amount of marijuana.[4] Later on, Vernon consented to a strip-search by another policeman, officer Baughman. According to Baughman's testimony, Vernon removed his pants and handed them to Baughman who thoroughly searched Vernon's pockets and found a small sliver of crack cocaine about the size of a grain of rice.

During his testimony, Vernon claimed that officer Baughman searched his pants pockets in the hallway area, outside Vernon's view, obviously insinuating that Baughman planted the crack cocaine in his pocket. After the government's counsel had finished cross-examination, the court directly inquired of Vernon as to whether he was accusing Officer Baughman of planting the crack cocaine, and Vernon eventually responded that he "guessed so." When asked by the court why an officer would plant such a small amount of cocaine on him, Vernon had no explanation.

■ As with defendant Smith, the jury didn't buy Mr. Vernon's story that Officer Baughman was the one responsible for the crack cocaine in his pants pocket. The jury instead chose to believe the testimony of Officer Baughman. Given the surrounding circumstances—including Vernon's presence in a house full of drugs and guns, the presence of crack cocaine in the same room where Vernon was found, the location of the bagged cocaine in relation to Vernon's key, and the fact that Vernon was allegedly standing over that location when he was first seen—the jury's finding was entirely justified. Viewing the evidence and reasonable inferences that can be drawn therefrom in a light most favorable to the government, there was more than sufficient evidence to find Vernon guilty of simple possession of crack cocaine.

### B. *Court's examination of Vernon*

Vernon contends that I erred when I "vigorously cross examined" him in front of the

---

**3.** When asked if he knew who owned the key, Vernon initially denied that it was his. Another occupant identified Vernon as the key's owner.

**4.** There is dispute as to whether Fettke conducted two searches of Vernon and whether, during the course of either or both of these searches, Fettke turned Vernon's pants pockets inside out. Vernon testified at trial that Fettke thoroughly searched him twice, on both occasions pulling out the lining of his pants pockets. Officer Fettke testified during a pretrial suppression hearing that he had initially done a pat down for weapons on Vernon and later searched him, discovering the money and marijuana. At trial, however, Fettke claimed he searched Vernon only once and apparently did not recall the pat down. At both the suppression hearing and at trial, Fettke maintained that he never turned Vernon's pants pockets inside out.

jury concerning his accusation that Officer Baughman had planted the sliver of crack cocaine found in his pants pocket. Vernon acknowledges that I had a duty to ask questions in order to clarify the issues and that I instructed the jury to disregard any of my remarks which they believed indicated how I would decide the case. (Inst. 33). However, Vernon argues that the manner in which I cross-examined him made it obvious that I did not believe that he was being honest and was "tantamount to calling him a liar." (Doc. 95, pp. 6–7).

"The trial court has the power to direct the trial along recognized lines of procedure in a manner reasonably thought to bring about a just result." *Rasmussen Drilling v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1154 (10th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978) (citing *Lowther v. United States*, 455 F.2d 657 (10th Cir.), *cert. denied*, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972)). A federal trial judge is allowed to participate in the trial and has the right to question witnesses to assist in bringing out the facts of the case and eliciting the truth. Fed.R.Evid. 614(b); *Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942); *Quercia v. United States*, 289 U.S. 466, 469–70, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1933); *United States v. Jones*, 730 F.2d 593, 598 (10th Cir.1984); *United States v. Speir*, 564 F.2d 934, 938 (10th Cir.1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1495, 55 L.Ed.2d 521 (1978); *United States v. Latimer*, 548 F.2d 311, 314 (10th Cir.1977); *United States v. Pinkey*, 548 F.2d 305, 308–10 (10th Cir.1977); *United States v. Munz*, 542 F.2d 1382, 1387 (10th Cir.1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555 (1977); *United States v. Wheeler*, 444 F.2d 385 (10th Cir. 1971). The Tenth Circuit has "encouraged" the exercise of this right. *Jones*, 730 F.2d at 598.

It cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or of a moderator at a town meeting. He or she sits to see that justice is done in the cases ... and to see that a case on trial is presented in such way as to be understood by the jury.... [A federal trial judge] should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other.

*Id.* (quoting *Simon v. United States*, 123 F.2d 80, 83 (4th Cir.1941)). A judge may even "comment reasonably upon the evidence, and express his opinion of it, provided it is made clear to the jury that it is not bound by his views." *Rasmussen*, 571 F.2d at 1154 (citing *United States v. Sowards*, 339 F.2d 401 (10th Cir.1964)); *see Quercia*, 289 U.S. at 469, 53 S.Ct. at 698–99.

On the other hand, a judge cannot go so far in his questioning and comments that he assumes the role of an adverse witness. *Quercia*, 289 U.S. at 470, 53 S.Ct. at 699. He must not "show hostility toward or become an advocate for one side." *Rasmussen*, 571 F.2d at 1154 (citing *Glasser*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, and *McBride v. United States*, 409 F.2d 1046 (10th Cir.1969), *cert. denied*, 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969)). "Upon [the judge] rests the responsibility of striving for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." *Glasser*, 315 U.S. at 82, 62 S.Ct. at 470. Accordingly, the judge must strike a balance between society's interests in ascertaining the truth and the defendant's right to a fair and impartial trial.

In the administration of the criminal justice system, the trial judge has the obligation of safeguarding the rights of the accused while at the same time protecting the interests of society. The adversary nature of criminal proceedings does not prohibit the trial judge from taking proper steps to aid and assist the jury in the truth finding quest leading to the proper determination of guilt or innocence. In the promotion of this goal, the trial judge has an obligation, on his own initiative, at proper times and in a dignified, and impartial manner, to inject certain matters into the trial which he deems important in the search for truth.

*Pinkey,* 548 F.2d at 308. In the present case, I believe I accurately struck such a balance.

■ When I pressed Vernon to tell the jury whether or not he was accusing Officer Baughman of planting the crack that was found in his pockets, and when I asked him to explain why, if Officer Baughman did in fact plant the cocaine, he chose to plant such a small amount, I did so because I thought those issues needed to be brought out in the search for the truth. Although I felt much of Vernon's testimony was fabricated, I questioned him on only this one area. I believed an accusation of such deliberate misconduct by a police officer, if that is what it was, needed to be clearly and unequivocally made. It was in society's best interests for the jurors to understand the nature of Vernon's defense and what it was they were going to have to decide before retiring to the jury room for their deliberations. I did not call Vernon a liar in front of the jury, nor did I do anything to disparage Vernon's character. I simply pointed out one of the many problems with Mr. Vernon's story, without hostility or advocacy. Although the jury may have perceived that I did not believe Vernon, I instructed them to disregard such perceptions and emphasized that **they** were the "sole judges of the credibility or 'believability' of each witness." (Insts. 28, 33). The jury's verdict manifestly reflects that, like me, they did not believe Vernon, and if the content of my questions and Vernon's answers assisted the jury in arriving at this verdict, then so be it. At the same time, the fact that the jury convicted Vernon of a lesser offense and acquitted him on the gun charge demonstrates that the jury dispassionately analyzed the evidence and did not reach its verdict upon a belief that by my questions, I expected them to convict Vernon on all counts. In any event, such was not my purpose. Rather, I believe that while a defendant has the right not to testify, he may not abuse or manipulate that right by testifying untruthfully. Just as I would not knowingly allow a police officer to give false testimony to secure a conviction, I will not allow a defendant to avoid conviction by false testimony. The Fifth Amendment does not authorize a defendant who chooses to testify to ignore his obligation to tell the truth.

### C. *Motion to Sever*

Finally, defendant Vernon contends that the court erred when it failed to sustain his motion to sever requesting a trial separate from that of defendant Smith.

Vernon's counsel presented a written pretrial motion to sever (Docs. 58–59), which the court denied. The motion was predicated on two concerns: (1) that portions of defendant Smith's statements to Officer Fettke implicating Vernon might be admitted into evidence; (2) that Smith might raise a compulsion type of defense which would be inconsistent with the defense Vernon intended to use; and (3) that Vernon's renal condition required that he be on dialysis every Monday, Wednesday, and Friday morning, which would cause substantial interruptions in a trial. With respect to the first concern, the court ordered that Smith's statement be redacted to eliminate any references to Vernon and instructed the jury that Smith's statements could be considered only against Smith and could not be considered in determining whether Vernon was guilty. (Inst. 31). With respect to the second concern, the court did not view the two prospective defenses as necessarily inconsistent or antagonistic and instructed the jury that evidence concerning involvement in street gangs should be considered only against Smith. (Inst. 31). Finally, regarding Vernon's renal condition, the court simply adjusted the trial schedule around Vernon's dialysis treatments.

During trial, Vernon's counsel orally raised the issue of severance a number of times. The court stood by its earlier ruling. Vernon now claims that the evidence against defendant Smith in this case was so overwhelming that it must have had some affect on the jury's deliberations concerning him and continues to maintain that Smith's compulsion defense—"the VLBs made me do it"—was inconsistent with and damaging to his line of defense—"Officer Baughman planted that cocaine on me."

Under Rule 8(b) of the Federal Rules of Criminal Procedure, defendants may be

charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14, in turn, permits a district court to grant a severance of defendants if "it appears that a defendant or the government is prejudiced by a joinder."

█ Severance is not a matter of right, and will not be granted absent a "strong showing of prejudice." *United States v. Holland*, 10 F.3d 696, 698 (10th Cir.1993); *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir.1993). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district court." *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Id.* at ——, 113 S.Ct. at 937. Joint trials are favored because they "promote economy and efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent trials,'" and they are particularly preferable where the co-defendants are alleged co-conspirators. *United States v. Ramos*, 839 F.Supp. 781, 784 (D.Kan.1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987)); *Youngpeter*, 986 F.2d at 353.

In *Zafiro*, the Supreme Court held that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." —— U.S. at ——, 113 S.Ct. at 938. The Court offered three examples of situations that may give rise to a high risk of prejudice:

(1) when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant; (2) when there is evidence that is probative of a defendant's guilt but technically admissible only against a codefendant; (3) when there is exculpatory evidence that would be available to a defendant tried alone but is unavailable in a joint trial.

*United States v. Kennedy*, 819 F.Supp. 1510, 1514 (D.Colo.), *aff'd, United States v. Byron*, 994 F.2d 747 (10th Cir.1993) (citing *Zafiro*, —— U.S. at ——, 113 S.Ct. at 938). The Court specifically held that severance was not required as a matter of law simply because co-defendants present mutually exclusive, conflicting, and/or antagonistic defenses, concluding that the risk of prejudice from contradictory defenses could often be cured with proper instructions. *Zafiro*, —— U.S. at ——-——, 113 S.Ct. at 938–39.

█ In the present case, a joint trial posed only a minimal risk of prejudice against defendant Vernon, a risk which could best be addressed through limiting instructions. The court carefully instructed the jury on the burden of proof and admonished them to consider the evidence against each defendant separately, identifying certain evidence as admissible only against defendant Smith. (Insts. 8, 24, 31). The court stands by its instructions and its decision not to sever. The court does not believe the evidence against defendant Smith and Smith's defense strategy strengthened the case against defendant Vernon or was antagonistic to his manufactured false defense. The jury's ultimate findings bear this out. Although Smith was found guilty of the charges in Counts II and III, the jury found Vernon guilty only on the lesser included offense of simple possession. As discussed *supra*, there is more than substantial evidence to support the jury's verdict on that offense. Vernon has simply failed to show that any actual prejudice or serious risk thereof arose from his being tried jointly with Smith.

**IT IS ACCORDINGLY ORDERED** that defendant Brandon J. Smith's motion for judgment of acquittal (Doc. 92) and defendant David E. Vernon's motion for judgment of acquittal, or in the alternative, a new trial (Doc. 94) are both hereby denied.