**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ANTHONY J. CARTA,

      Defendant-Appellant.

No. 97-8101
(D. Wyoming)
(D.C. No. CIV 96-CR-28-B)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **CAMPBELL**,[**] District Judge.

---

Following a trial by jury, Anthony J. Carta was convicted of four counts of witness tampering and acquitted of one count of obstruction of justice. On appeal, Mr. Carta challenges the admission of a tape recording. We conclude that the district court did not err in admitting the tape recording and we affirm the convictions.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470.

[**] The Honorable Tena Campbell, District Judge, for the U.S. District Court for the District of Utah, sitting by designation.

## BACKGROUND

Mr. Carta was convicted of attempting to persuade four witnesses who appeared before a federal grand jury to withhold testimony and documents from the grand jury and to destroy written communications they had received from Mr. Carta. The grand jury was investigating Mr. Carta and others on charges arising out of an investment scheme. Dr. Peter Pranckun was one of the witnesses.

In 1994, Dr. Pranckun, who had invested approximately $200,000 in the investment scheme, met Mr. Carta for the first time. During this meeting, Dr. Pranckun and Mr. Carta discussed problems that had arisen with the investment. The two men met a second time, approximately nine months later. They also spoke several times by telephone. When Mr. Carta received information that Dr. Pranckun was cooperating with the F.B.I., he confronted Dr. Pranckun who denied the charge; a dispute arose. Sometime later, Dr. Pranckun believed it was around Christmas of that year, he received a letter of apology from Mr. Carta. After their dispute, but before Dr. Pranckun received the letter of apology, he and Mr. Carta spoke by telephone. Dr. Pranckun recalled that Mr. Carta mentioned that he was recording the conversation. Approximately one month after receiving the letter of apology, Dr. Pranckun was subpoenaed to appear before the grand jury. He appeared in January 1996.

Mr. Carta was arrested in February 1996 on the federal fraud charges. Following his arrest, the F.B.I. searched the motor home Mr. Carta had been driving. A tape

recording of a conversation between Dr. Pranckun and Mr. Carta was found during the search. It is the admission of this tape recording that Mr. Carta now raises on appeal.

**DISCUSSION**

A.      Foundation for the Tape Recording

Mr. Carta contends that the foundation laid by the government did not meet the requirements of Fed. R. Evid. 901 and, therefore, the tape recording should not have been admitted. He points to a number of claimed deficiencies in the foundation, particularly the inability of the government to fix the exact date when the recorded conversation occurred.

In reviewing the sufficiency of the foundation needed for admission of a recorded conversation, this court has "specifically rejected the adoption of 'inflexible criteria applicable to all cases.'" United States v. Jones, 730 F.2d 593, 597 (10th Cir. 1984) (quoting United States v. Smith, 692 F.2d 693, 698 (10th Cir. 1982)); see also United States v. Rodriguez-Garcia, 983 F.2d 1563, 1569 (10th Cir. 1993). "[W]e will not upset the judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording." Jones, 730 F.2d at 597 (citations omitted). Here we are convinced that the government's foundation was sufficient.

Dr. Pranckun testified that he recognized the first two voices on the tape as his and

Mr. Carta's.[1] Dr. Pranckun testified initially that the conversation took place in the summer or fall of 1995, but on cross-examination, he stated that he had no idea when the conversation took place. However, Dr. Pranckun testified that in the conversation, he and Mr. Carta were discussing the problem that had arisen between them concerning the allegation that Dr. Pranckun was cooperating with the F.B.I. Dr. Pranckun testified that this problem had occurred in the summer of 1995. In addition, Dr. Pranckun testified that the conversation had taken place before he received the letter of apology from Mr. Carta near Christmas of 1995. By reference to the dispute between Mr. Carta and Dr. Pranckun and the receipt by Dr. Pranckun of the letter of apology, the government established a sufficient foundation as to the time when the recorded conversation occurred.

The tape recording was found in the search of a motor home in which Mr. Carta had been living; the defense stipulated to the chain of custody of the tape recording. Dr. Pranckun testified that he recalled that Mr. Carta told him that he was recording the conversation and, on the tape, Mr. Carta states that he is recording the conversation.

Given the above indicia of authenticity, it is clear that the district court did not abuse its discretion in admitting the tape recording.

B.      Rule 403

Mr. Carta argues that nothing discussed in the recorded conversation related to the

---

[1]On the original tape, another conversation had been recorded over the conversation between Dr. Pranckun and Mr. Carta. This second conversation was redacted.

grand jury investigation or witness tampering and, therefore, the tape recording had little or no probative value. He also contends that because Mr. Carta is heard on the tape raising his voice in an angry conversation with Dr. Pranckun, there was substantial danger of prejudice resulting from the admission of the tape recording. It is Mr. Carta's position that under Fed. R. Evid. 403, the district court committed error in admitting the tape recording. The government argues that the conversation was probative in that it made reference to the investment that was the subject of the grand jury investigation (although no mention is made of the investigation or of the grand jury), and that it was relevant to show Dr. Pranckun's state of mind, that is, that he was told that if he continued to cause problems, he would lose the money he had invested.

Although the conversation is of marginal relevance, it also does not appear that the danger of unfair prejudice resulting from the tape is significant. We therefore conclude that the district court did not abuse its discretion under Rule 403 in admitting the tape recording.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.


ENTERED FOR THE COURT

Tena Campbell
United States District Judge


-5-