**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellant,

v.

PHILLIP LA COCK,

       Defendant - Appellee.

No. 02-2283

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-00-552-JP)**

---

John G. Malcolm, Deputy Assistant Attorney General, Criminal Division, United States Department of Justice, Washington, D.C. (David C. Iglesias, United States Attorney, District of New Mexico, and Nina Goodman, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C., with him on the briefs), for Plaintiff-Appellant.

Roger A. Finzel, Assistant Federal Public Defender, Albuquerque, New Mexico (Scott M. Davidson, Research and Writing Specialist, Albuquerque, New Mexico, with him on the brief), for Defendant-Appellee.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

**EBEL**, Circuit Judge.

---

Defendant Phillip La Cock was indicted on three counts stemming from his possession of a "destructive device" as defined in 26 U.S.C. § 5845(f). He moved to dismiss the indictment on the ground that his device was a homemade intruder alarm that fell outside the definition of the statute. After hearing testimony from experts on both sides, the district court granted Defendant's motion. The Government timely appealed. For the reasons that follow, we take jurisdiction pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291, conclude that the district court erroneously dismissed the indictment, REVERSE the dismissal of the indictment and REMAND for further proceedings consistent with this opinion.

## BACKGROUND[1]

On December 1, 1998, police officers executed a search warrant at the home of Defendant-Appellee Phillip La Cock ("Defendant") in Roswell, New Mexico. They were looking for kitchenware and other items that Defendant had allegedly stolen from a local hotel. While in Defendant's bedroom, the officers discovered a small metal box that was 11 inches high, 12.5 inches wide and 10 inches deep. On top of the box was written, "Danger Do Not Open." Seeing this, the officers called the bomb squad to disarm the box, which they did successfully.

---

[1]The relevant facts, which neither party disputes, are drawn from the district court's slip opinion dismissing the indictment.

The inside of the box contained a metal divider that separated its interior into two compartments, one slightly larger than the other. In the larger compartment were three rounded river rocks that weighed about 18 pounds. In the smaller compartment were approximately 80 grams of Pyrodex powder scattered around the bottom.[2] Mixed in with the Pyrodex powder were 26 Black Cat firecrackers and some wooden matches. An initiator for the device was attached to the divider on the side of the compartment containing the Pyrodex and the firecrackers. The initiator consisted of a small cylinder of duct tape that was lined with strike pads torn from matchbooks. At the bottom of the cylinder were three wooden matches with a cluster of match heads ("the match device") glued to them. The three matches were bound together with a wire that was also attached to the lid of the box. The initiator was designed such that when the lid of the box was opened, the wire would pull the match device through the cylinder and along the strike pads, causing the match device to ignite. The resulting flame would ignite the Pyrodex power, which in turn would light the firecrackers.

For his possession of the device, Defendant was charged, in a three-count superseding indictment, with manufacturing a destructive device, in violation of 26 U.S.C. §§ 5822, 5861(f), and 5871; possessing an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; and using explosive

---

[2]Pyrodex is a commercial substitute for black gun powder.

material to commit a felony (specifically, the manufacture of a destructive device), in violation of 18 U.S.C. § 844(h).  All of the charges thus turn on whether the Defendant's device is a "destructive device" as defined in 26 U.S.C. § 5845(f).  That statute defines "destructive device" as follows:

> **The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb,** (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, **or (F) similar device**; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. **The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon**; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; **or any other device which the Secretary finds is not likely to be used as a weapon**, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

Id. (emphasis added).

Defendant moved to dismiss the indictment, arguing that 1) the statute was unconstitutionally vague as applied to his case; 2) his device was simply an improvised intruder alarm and not designed as a weapon; and 3) his device was not a "destructive device" because it would not explode.  He argued in the motion

that his device was usually kept on a table near the back entrance to his house.[3]  It was intentionally placed there, Defendant said, to get the attention of anyone who broke into his home, which had been burglarized several times previously.  If the lid were removed quickly enough, the box was meant to send up a brief flash of light, a cloud of smoke, and noise from the firecrackers.  The noise and light, said Defendant, were intended to alert his neighbors to the intruder's presence and presumably scare the intruder away.[4]

On July 23, 2002, the district court held a hearing on the motion to dismiss the indictment, and both parties introduced exhibits and expert testimony.[5] Defendant's expert, Nelson Welch, testified that he had conducted experiments using a device similar to the one found in Defendant's home.  He testified that he could not determine whether Defendant's device actually would have worked, but that if it had, the Pyrodex would have burned, not exploded.  He stated that the only way that black powder can "cause any kind of damage is if it is confined,

---

[3]The record contains no indication as to why the device was found in Defendant's bedroom on the day that the search warrant was executed.

[4]Neither Defendant nor the Government speculate as to why an intruder would quickly open a metal box clearly marked "Danger Do Not Open."

[5]To expedite the hearing, all witness testimony was introduced by a proffer from counsel as to what the witness would testify on direct examination.  The witnesses were present and subject to cross-examination and redirect.  For the sake of simplicity, we do not here distinguish between the lawyers' words characterizing the testimony during the proffers and the witnesses' own words on cross-examination or redirect.

compressed, held together." In Defendant's device, however, the powder was only loosely scattered at the bottom of the box. Welch said that he did not think that the device was intended as a weapon. But on cross-examination, Welch acknowledged that the flames that shot up from the device could injure someone "[i]f their face was directly over the box."

The Government called three expert witnesses. Michael Davies, a member of the bomb squad that disarmed the device, called it an "incendiary type of device which was an improvised explosive device" and that "the initiator was not electrical and that it was of a booby-trap, victim-related type of device." He believed that the device would function as designed.

Bradley Cooper, a forensic chemist for the Bureau of Alcohol, Tobacco, and Firearms (ATF), testified that Pyrodex is "considered an explosive material" because it is "a chemically unstable material that will react and with great rapidity, with great speed. It would deflagrate, burn very, very quickly, and would give out large amounts of gas, heat, energy, and that would put it into the explosives classification." He characterized Pyrodex as a "low explosive" (as opposed to TNT, a high explosive), because it would deflagrate, or burn up very rapidly. On cross-examination, Cooper acknowledged that the Pyrodex "would need to be confined to have any type of explosive property," such as being "piled up in a pile" in significant (but unspecified) amounts.

The Government's last expert witness was Brian Hart, an ATF explosives enforcement officer, who testified about what constitutes a "destructive device" under 26 U.S.C. § 5845(f). To fit within the definition, "there must be a main charge explosive or incendiary or poisonous gas... a means of confinement and a means of initiation. If those three components are in a device, along with if it is designed as a weapon, it is a destructive device." Hart testified that Defendant's device was a "destructive device" because it contained all three components. He said that it could be characterized as either an "explosive" or "incendiary" bomb—the former because it "had explosive material in it," and the latter because it would "deflagrate" but not explode. Hart said that "[b]y design it is a weapon" and called it a "booby trap."

The hearing concluded at the end of Hart's testimony. In a written disposition entered on August 12, 2002, the district court granted Defendant's motion to dismiss the indictment, on the grounds that the device was not designed as a weapon and was not a "bomb" because it would not explode.[6]

The court first resolved in Defendant's favor the conflict between the government's characterization of the device as a booby trap and Defendant's

---

[6]The court did not address Defendant's vagueness argument, nor is that argument raised on appeal. As such, we do not address it here.

characterization of it as an intruder alarm. Although, noted the court, "the flame [from the device] may have some potential to cause harm,"

> ... the device is by no means clearly designed for that purpose. The box cannot expel projectiles. The box is constructed to emit noise, light, and smoke. Viewed objectively, this admittedly "unique device" was not designed to be a weapon, but rather a signaling device in the form of an alarm as Defendant asserts. Thus, by definition the device cannot be a destructive device.

Second, the court stated that even if the box were assumed to be a weapon, "the Government would still have to overcome Defendant's second argument that, without explosive capabilities, the box is not a destructive device." All of the experts agreed, said the court, that the Pyrodex powder would not explode, but only deflagrate. The court then stated that to fall within the statutory definition of "destructive device," a device must have <u>explosive</u> capabilities—not simply <u>incendiary</u> capabilities. "'If Congress had[7] intended to cover any dangerous incendiary [under Section 5845(f)(1)], it could have done so.... But it did not do so, and, until it does, we must read the word 'bomb' so that it retains some sensible meaning'" (quoting <u>United States v. Podolsky</u>, 625 F. Supp. 188, 199 n.13 (N.D. Ill. 1985)) (alterations in original). The district court concluded that because Defendant's device was "incendiary in nature and incapable of exploding[,] it is not a destructive device within the meaning of 26 U.S.C. [§ ]

---

[7]The word "had" does not appear in the <u>Podolsky</u> opinion; its inclusion by the district court appears to be a mistranscription.

5845(f)(1)." Accordingly, because all of the charged counts rested on Defendant's possession of a "destructive device," the court dismissed the superseding indictment in its entirety. The Government timely appealed.[8]

---

[8]Before turning to the merits, we briefly address two ancillary issues in this case.

The first issue is Defendant's outstanding motion to dismiss this appeal for lack of jurisdiction on double jeopardy grounds. Defendant argues that the district court's dismissal of the indictment was functionally equivalent to an acquittal, and therefore that allowing the Government to appeal the dismissal would violate the Double Jeopardy Clause.

We reject that argument because at the time the indictment was dismissed, Defendant had not yet waived his right to a jury trial. As such, the district court could not have decided Defendant's innocence or guilt, which means that jeopardy had not yet attached. See Serfass v. United States, 420 U.S. 377, 389, 391–92 (1975) ("At no time during or following the hearing on petitioner's motion to dismiss the indictment did the District Court have jurisdiction to do more than grant or deny that motion, and neither before nor after the ruling did jeopardy attach.... Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier having jurisdiction to try the question of the guilt or innocence of the accused. Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." (internal citations and quotations omitted).

The second issue deals with the Order to Show Cause entered by this court on November 7, 2002, which tolled briefing on the merits and instructed the parties to file briefs addressing "Whether Plaintiff United States of America has complied with the certificate requirement set forth in 18 U.S.C. § 3731?"

As both parties acknowledge, the plain language of § 3731 makes clear that there is no certificate requirement when the Government appeals the district court's dismissal of an indictment. Thus, our Order was unnecessary, and we may proceed to address the Government's appeal on the merits.

# DISCUSSION

"As a general rule, 'in reviewing a trial court's order granting or denying a motion to dismiss an indictment, the appellate court can only reverse if the lower court abused its discretion.'" United States v. Wood, 6 F.3d 692, 694 (10th Cir. 1993) (quoting United States v. Strayer, 846 F.2d 1262, 1265 (10th Cir. 1988)). "However, if, as here, the court dismisses the indictment based on its interpretation of the governing statutes, that is a legal determination we review de novo." Id. (citing Tramp v. United States, 978 F.2d 1055, 1055 (8th Cir. 1992)). Because the district court's dismissal was based on the legal determination that Defendant's device was not covered by 26 U.S.C. § 5845(f), our review of that conclusion is de novo. For the reasons that follow, we find that the district court's conclusion was erroneous and that the indictment should not have been dismissed.

Under § 5845(f)(1), a destructive device includes "any... explosive [or] incendiary... bomb... or similar device." The district court determined that Defendant's device fell outside that definition because it was "incendiary and incapable of exploding" and therefore was not a "bomb." That determination was erroneous.

By suggesting that to constitute a "bomb," a device must explode, the district court's interpretation read the word "incendiary" out of the statute.

- 10 -

In so doing, the court violated "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations and citations omitted). The word "incendiary" in the statute "cannot be regarded as mere surplusage; it means something." Potter v. United States, 155 U.S. 438, 446 (1894). And where, as here, the language of a statute is "clear and unambiguous, then the plain meaning of the words must be given effect." Resolution Trust Corp. v. Love, 36 F.3d 972, 976 (10th Cir. 1994).

Defendant's device was designed, upon activation, to shoot a six-foot-high flame into the air and in the process "give out large amounts of gas, heat, [and] energy."[9] That seems clearly to be an "incendiary bomb" or "similar device" under § 5845(f). In the flame-producing manner of its operation, the device is similar to a Molotov cocktail or other types of firebombs that have been held to constitute "incendiary bombs," even though they do not explode. See, e.g., United States v. Simmons, 83 F.3d 686, 687 (4th Cir. 1996) ("[C]ourts have

---

[9]As the district court correctly noted, whether the device would have functioned as designed is irrelevant to the determination as to whether it falls within the terms of § 5845(f) (citing United States v. Johnson, 152 F.3d 618, 628 (7th Cir. 1998) ("Shoddy workmanship cannot make a device that contains all the ingredients necessary to inflict harm, and to do nothing more, into something more benign.") (analyzing whether a device constituted a destructive device under the "combination of parts" provision of § 5845(f)(3)).

uniformly held that a fully-assembled Molotov cocktail—defined as a device comprising a bottle, gasoline, and a rag—constitutes an 'incendiary . . . bomb' or 'similar device' under section 5845(f).") (citing cases); United States v. Ragusa, 664 F.2d 696, 697, 699–700 (8th Cir. 1981) (finding that a device consisting of "six trash bags, each holding a five-gallon container of gasoline, suspended in various locations and connected by overlapping paper towels trailing throughout the house" qualified as an incendiary bomb under § 5845(f)).

We conclude, therefore, that the district court erred when it dismissed the indictment after determining that Defendant's device was not an "incendiary bomb" simply because it did not explode.

We now turn to the other ground on which the district court dismissed the indictment—its conclusion that the device, although it "may have some potential to cause harm," was not "designed to be a weapon, but rather a signaling device in the form of an alarm as Defendant asserts." Because § 5845(f) specifically excludes devices "neither designed nor redesigned" for use as weapons, the district court concluded that Defendant's device fell outside the terms of the statute. The district court may indeed have been correct to so conclude. However, that determination is not ours to make, nor was it the district court's. Along with several other circuits, we have previously held that the determination as to whether a device was "designed [or] redesigned for use as a weapon" is an

<u>affirmative defense</u>, not an element of the crime that must be alleged in the indictment.  <u>See</u> <u>United States v. Neal</u>, 692 F.2d 1296, 1303 (10th Cir. 1982); <u>see also</u> <u>United States v. Johnson</u>, 152 F.3d 618, 623 (7th Cir. 1998); <u>United States v. Posnjak</u>, 457 F.2d 1110, 1116 (2d Cir. 1972); <u>United States v. Oba</u>, 448 F.2d 892, 894 (9th Cir. 1971).  As a contested affirmative defense, Defendant's argument that the device was not designed as a weapon should be resolved at trial, not during a motion to dismiss the indictment.  It was error for the court to dismiss the indictment on this ground.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's dismissal of the indictment and REMAND for further proceedings consistent with this opinion.