**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JARED LEE TODD,

Defendant-Appellee.

Nos. 05-6127, 05-6252

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:04-CR-00221-L)**

Richard A. Friedman, Appellate Section, Criminal Division, United States
Department of Justice (John C. Richter, United States Attorney, and Edward J.
Kumiega, Assistant United States Attorney with him on the briefs) for Plaintiff-
Appellant.

Joseph L. Wells, Oklahoma City, Oklahoma, for Defendant-Appellee.

Before **TACHA,** Chief Circuit Judge, **HENRY**, and **McCONNELL**, Circuit
Judges.

**McCONNELL**, Circuit Judge.

In these consolidated cases, the government appeals two district court

rulings. The first is the district court's dismissal of one count of an indictment at

a pretrial suppression hearing, based on the government's alleged failure to provide sufficient evidence to support the charge. The second is the district court's decision to exclude 680.4 grams of methamphetamine from the drug quantity calculation at sentencing. We reverse the district court's dismissal of one count of the indictment and remand for further proceedings. Because the district court lacked jurisdiction to proceed with sentencing after the government filed an appeal, we also vacate the sentence imposed by the district court.

## I. Background

Jared Lee Todd came to the attention of Detective Kenneth Russell Park while Detective Park was investigating the Universal Aryan Brotherhood's connection to a methamphetamine laboratory and a shooting that occurred in March 2004. In connection with his investigation, Detective Park interviewed Christopher Spindler on September 23, 2004. Spindler said that he obtained methamphetamine from "Jerry Todd," that Mr. Todd was being supplied methamphetamine by Greg Minard, that he had "seen Mr. Todd sell methamphetamine countless times," and that Todd was a member of the Universal Aryan Brotherhood. Suppression Hr'g Tr. 91-92. On November 1, 2004, Detective Park received information from an anonymous caller that Jared Todd was selling drugs and that the caller had seen Mr. Todd with a gun. Although Detective Park never obtained the name of this caller, the caller did leave his

phone number, which matched the number that registered on Caller I.D. Over the next week, Detective Park spoke with this anonymous caller at least four times. Detective Park asked the informant to call him the next time he had information that Mr. Todd had drugs at his trailer. On November 8, 2004, the anonymous caller contacted Detective Park to inform him that Mr. Todd was in possession of four ounces of methamphetamine.

Responding to the information obtained from Spindler and the anonymous caller, Detective Park and eight police officers from the Oklahoma City Police Department Special Projects Unit drove to the address given by the informant, which proved to be a shed and Mr. Todd's trailer. As Detective Park approached the shed next to the trailer, he saw three people sitting on a bench inside the shed. Detective Park identified himself to everyone, and then asked to speak with Mr. Todd. Mr. Todd agreed to talk with Detective Park and they walked over to Detective Park's undercover truck. Mr. Todd then gave Detective Park written consent to search the premises and waived his *Miranda* rights.

During the interview, Mr. Todd admitted to distributing methamphetamine and showed Detective Park a bag which appeared to contain about one ounce of methamphetamine. He informed Detective Park that during the past year he had obtained at least two ounces of methamphetamine per month from different drug sources, although his primary source of supply was Greg Minard. He would then

redistribute the methamphetamine to other people in smaller quantities, one-half ounce at the most. He further explained that he contributed to the manufacture of methamphetamine by purchasing pseudoephedrine and Toulene for Mr. Minard. Mr. Todd also acknowledged his affiliation with the Universal Aryan Brotherhood, a nationwide prison gang consisting primarily of white males.

Aside from admitting his involvement in methamphetamine distribution, Mr. Todd confessed to Detective Park that he had previously possessed a firearm, namely a 9mm Berretta handgun that he purchased from James Whitfield. Mr. Todd explained that he had the handgun because he was afraid of several members of the Universal Aryan Brotherhood. He also told Detective Park about an incident involving Tracy Brunkin, a fellow member of the Universal Aryan Brotherhood. Several weeks earlier, Todd and Brunkin had gotten into an argument and Todd fired a shot at Brunkin, missing him, but making a bullet hole in the sheet metal fence that ran alongside one edge of Todd's property. Mr. Todd showed Detective Park the bullet hole and other agents took photographs of the hole. Detective Park characterized the bullet hole as being fairly recent and coming from a small-caliber gun. Based on the picture, a ballistics expert determined that the bullet hole was fired from a .380, .38, .357 or 9mm handgun. Todd further explained that he had sold the gun to Angel, another methamphetamine dealer, because Mr. Todd was concerned that investigators

-4-

were looking into him in connection with the March shooting. While Mr. Todd was being booked on preliminary charges, he spontaneously volunteered to the booking officer that he had owned a gun, but had discarded it a few months before his arrest.

A federal grand jury returned a four-count indictment against Mr. Todd. He was charged with two substantive counts of possessing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a); one count of conspiracy to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 846; and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Before trial, Mr. Todd filed several motions to suppress statements and physical evidence obtained during the November 8, 2004 encounter. One of these motions claimed that Mr. Todd's admission to possessing a firearm should be suppressed because Mr. Todd made the statements during a Rule 11 plea discussion and did not voluntarily waive his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He further argued that because his statement was the only evidence supporting the firearm possession count, that charge should be dismissed. In response, the government argued that the statements should not be suppressed because Mr. Todd voluntarily waived his *Miranda* rights and the facts corroborating Mr. Todd's possession of a firearm ensured that his confession was reliable.

-5-

Mr. Todd also moved to dismiss the firearm count, claiming that a public service announcement sponsored by the United States Attorney's Office created an implied amnesty from prosecution for any person who disposed of an illegally possessed firearm. The government filed a responsive motion opposing his motion to dismiss and claiming that the public service announcement did not offer amnesty. The district court held an evidentiary hearing on Mr. Todd's motion to suppress and heard argument from counsel on Mr. Todd's motion to dismiss for implied amnesty. At the end of the suppression hearing, defense counsel argued, as he had in the written motion, that the firearm count should be dismissed because the only evidence to sustain it was Mr. Todd's inadmissible statements. The district court denied Mr. Todd's motion to suppress the statements made to Detective Park. The court nonetheless granted his motion to dismiss the firearm count on the ground that the confession was not corroborated by other evidence.

Mr. Todd proceeded to trial on the remaining three counts. Before trial the court granted a judgment of acquittal under Rule 29(b) of the Federal Rules of Criminal Procedure on the conspiracy charge. On March 16, 2005, the jury found Mr. Todd guilty on the remaining two counts of possessing methamphetamine. On March 21, 2005, the court entered a final order dismissing the firearm count. On April 11, 2005, the government filed an appeal, pursuant to 18 U.S.C. § 3731, challenging the dismissal of the firearm count.

Despite the pending appeal, the district court ordered the completion of a Presentence Investigation Report (PSR). The PSR recommended a base offense level of 32, based on a total of 717.4 grams of methamphetamine, which included 680.4 grams calculated from Mr. Todd's admission to Detective Park that he purchased at least two ounces per month from various sources during the year preceding his arrest. The PSR also recommended a two-level enhancement for possession of a firearm and a two-level enhancement for the unsafe storage of the chemicals Todd supplied for use in methamphetamine production. With a total offense level of 36 and criminal history category V, the PSR recommended a sentencing range of 292-365 months' imprisonment.

At the sentencing hearing on July 8, 2005, defense counsel objected to the PSR's inclusion of the additional drug quantities, on the grounds that it was acquitted conduct under the conspiracy count and that sentencing Mr. Todd for the additional quantity would violate the rule against double jeopardy. Defense counsel also argued that Mr. Todd did not redistribute methamphetamine, but rather purchased it for personal use. In response, the government informed the court that Mr. Todd had admitted to the investigating officer that he sold drugs to a specific individual, Steven Woolf, and that an independent witness, Spindler, stated that he had seen Mr. Todd distribute methamphetamine "countless times." Tr. Sent. Hr'g 24. The district court concluded that the drug quantity calculation

should include only the 37 grams of methamphetamine actually seized from Mr. Todd. In rejecting the PSR's recommendation, the district court stated:

> [T]his is a unique situation where the Court has had the opportunity, through both the pretrial hearings and the trial, to hear all of the evidence, and the Court finds that . . . there is not a preponderance of the evidence to support the amount of methamphetamine to support a base level offense of 32, but, rather, based upon both the evidence and the jury's findings, the Court finds that the amount of drugs that should be attributable to Mr. Todd are 37 grams, which would create a base level of 22 . . . .

Tr. Sent. Hr'g 26-27. A base offense level of 22 corresponded to a guidelines range of 77 to 96 months, and the court imposed a sentence of 86 months' imprisonment, finding that such a sentence was reasonable in light of the evidence. On July 15, 2005, the district court entered an order of Judgment and Commitment. The government filed an appeal to challenge Mr. Todd's sentence on August 5, 2005.

## II. Discussion

### A. Dismissal of the Firearm Count

#### 1. Preservation of the Issue

The government contends that it was erroneous for the district court to determine at a pretrial suppression hearing that Mr. Todd's admission to possessing the firearm was insufficiently corroborated and to dismiss the charge. The government preserved this issue for appeal by objecting to Mr. Todd's

request for dismissal in the government's responsive motions to Mr. Todd's motion to dismiss and motion to suppress.

Mr. Todd argues that the government "has waived the issue of the correct timing of the district court's dismissal of the count by failing to raise the objection to the timing of the dismissal below." No. 05-6127, Appellee Br. 6. To the extent the government's argument is based on the "correct timing" of the district court's dismissal decision – for example, a complaint of unfair surprise – we agree. Such a complaint could have been cured by a timely objection. But the government's appeal in this case extends beyond issues of timing, to the substance of the district court's dismissal order. That issue was preserved by the government's objection to the Defendant's motion to dismiss.

We note also that the district court's decision to dismiss for lack of corroborating evidence was made on its own, without motion by the Defendant. When a "district court *sua sponte* raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court." *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003). In such cases, we use "the same standard of appellate review that would be applicable if the appellant had properly raised the issue." *Id.*

Although Mr. Todd filed two motions related to the firearm possession charge, neither motion sought dismissal for lack of corroboration. Mr. Todd's first motion was a motion to suppress his statement to Detective Park regarding possession of the firearm. As a corollary to the suppression motion, and because "[t]he only evidence concerning Mr. Todd's possession of a gun came from his own statement," Mr. Todd also asked the district court to dismiss the firearm charge. Doc. 18, Mot. to Suppress Statements with Brief in Support 5. Mr. Todd did not argue that dismissal would be warranted even if his statement was not excluded. Mr. Todd's second motion was a motion to dismiss the firearm charge on the ground that public service announcements implied amnesty for felons who discarded their firearms.

Mr. Todd's arguments at the hearing mirrored those made in his pre-hearing motions. Defense counsel argued that the firearm charge should be dismissed because the only evidence supporting the charge was Mr. Todd's own admission, which defense counsel claimed was inadmissible both under *Miranda* and because it was a statement made during a plea agreement. Counsel argued that the charge should be dismissed because the only evidence supporting it was inadmissible—not that the charge should be dismissed even if Mr. Todd's statement was admitted. Mr. Todd's request for dismissal was specifically contingent on the district court suppressing his statement.

-10-

The district court denied Mr. Todd's motion to suppress his statement, but nonetheless dismissed the firearm charge because Mr. Todd's statements, although admissible, were not corroborated.  *See* Suppression Hr'g Tr. 268 ("[T]he prosecution, in addition to the confession or admission, must produce substantial independent evidence of the essential elements of the crime charged which will tend to establish the trustworthiness of the statements made by the accused.").  Thus, the district court acted *sua sponte* in deciding to dismiss the charge for failure to corroborate Mr. Todd's admission.  Accordingly, even if the government's objection to dismissal of the count were not sufficient to preserve the issue, the government would still be entitled to appeal.

2.  Merits of the Dismissal

We review the sufficiency of an indictment *de novo*, *United States v. Avery*, 295 F.3d 1158, 1173-74 (10th Cir. 2002), but we review the district court's dismissal of an indictment for an abuse of discretion.  *United States v. Wood*, 6 F.3d 692, 694 (10th Cir. 1993).  "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).  Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's

-11-

evidence. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id. See also United States v. Sampson*, 371 U.S. 75, 78-79 (1962) (finding it irrelevant that charges had not been established by evidence, because at a motion to dismiss "the indictment must be tested by its sufficiency to charge an offense"). Courts should therefore avoid considering evidence outside the indictment when testing the indictment's legal sufficiency. *Hall*, 20 F.3d at 1087.

> Count Two of the Superseding Indictment charged Mr. Todd with unlawfully and knowingly after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, possess[ing] one 9mm Beretta handgun, which was in and affected interstate commerce, as this firearm had previously crossed state lines to enter the State of Oklahoma.
>
> All in violation of Title 18, United States Code, Section 922(g)(1); the penalty for which is found in Title 18, United States Code, Section 924(a)(2).

Superseding Indictment 3. The statute Mr. Todd was charged with violating provides:

> It shall be unlawful for any person . . . (2) who is a fugitive from justice . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

-12-

18 U.S.C. § 922(g). The charges contained in Count 2 of the Superseding Indictment satisfied the requirements of the criminal statute. According to the allegations in the indictment, Mr. Todd possessed a firearm, namely a 9mm Beretta handgun, that had previously traveled in interstate commerce. These allegations, if proved, are sufficient to establish a violation of section 922(g)(2). The indictment also notified Mr. Todd of the crime for which he was being charged and permitted him to know whether he had a double jeopardy defense. The firearm count in the indictment was therefore legally sufficient.

Nonetheless, the district court dismissed the indictment because there was insufficient factual support for the charge. That was not the proper inquiry. On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. *Sampson*, 371 U.S. at 78-79; *Hall*, 20 F.3d at 1087. For the most part, that question does not involve any examination of the evidence.

In "limited circumstances," however, this Court has held that a district court may "dismiss charges at the pretrial stage . . . where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." *Hall*, 20 F.3d at 1088. Pretrial dismissal based on undisputed facts is a

-13-

determination that "*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." *Id.* Dismissal in this manner is the "rare exception," not the rule. *Id.* Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted.

For example, in *Hall*, 20 F.3d at 1085-86, the defendant offered undisputed evidence that he was not present when drugs, drug paraphernalia, and a pistol were found in his home. The defendant therefore established that he could not, as a matter of law, be charged with knowingly using or carrying a pistol during and in relation to a drug-trafficking offense. *Id.* at 1088. Similarly, in *Wood*, 6 F.3d at 694-95, the defendant offered undisputed evidence leading to the conclusion that FBI agents were working on behalf of the grand jury. As a result, the defendant could not be prosecuted for making a false statement to an FBI agent, because the "judicial function" exception applied to his case. *Id.* at 695. The obstruction of justice charge in *Wood* was also inadequate as a matter of law because the undisputed facts showed that the FBI did not terminate their investigation based on the defendant's false, self-serving, exculpatory statements, and therefore the statements "did not have the natural and probable effect of impeding the due administration of justice." *Id.* at 697. In *United States v.*

-14-

*Brown*, 925 F.2d 1301, 1305 (10th Cir. 1991), the government admitted in an evidentiary hearing that it could not provide evidence demonstrating that stolen intellectual property involved physical goods that were themselves stolen. Because prosecution under the statute required such a showing, we upheld the district court's decision that the indictment was insufficient as a matter of law. *Id.* at 1308-09.

That exception is inapplicable here. Mr. Todd specifically admitted to both Detective Park and a booking officer that he had previously possessed a firearm. Mr. Todd showed Detective Park a bullet hole in the sheet metal fence caused when he fired a shot at Tracy Brunkin. Whether or not this evidence, standing alone, was sufficient to convict, it does not demonstrate, as a matter of law, that Mr. Todd could not have committed the crime. The district court therefore abused its discretion in dismissing the count.

B.    *Sentencing Challenge*

In the second appeal, case number 05-6252, the government contends that the district court erred in concluding that there was not a preponderance of evidence to support a finding that Mr. Todd possessed a total of 717.4 grams of methamphetamine. Because the district court was without jurisdiction to proceed with the case after the government filed a timely notice of appeal, we must set aside the district court's sentence without considering the government's claim.

The government's notice of appeal was filed on April 11, 2005. The appeal was filed pursuant to 18 U.S.C. § 3731, which provides:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

18 U.S.C. § 3731. Filing of a timely notice of appeal under § 3731 "divests the trial court of jurisdiction and confers jurisdiction on the court of appeals." *United States v. Mavrokordatos*, 933 F.2d 843, 846 (10th Cir. 1991). Accordingly, this Court will set aside any action taken by a trial court after the government files a timely notice of appeal under § 3731. *See id.* at 848. Because the district court was divested of jurisdiction on April 11, 2005 and remained without jurisdiction until the completion of this appeal, the district court had no jurisdiction to hold a sentencing hearing or issue an order of Judgment and Commitment in July 2005.

### III. Conclusion

For the reasons stated above, we reverse the district court's dismissal of the firearm count, reinstate the charge against Mr. Todd for possession of a firearm, and remand for further proceedings. We also vacate the sentence imposed by the district court as it lacked jurisdiction to proceed with sentencing after the government filed an appeal, and remand for resentencing.