FILED
United States Court of Appeals
Tenth Circuit

July 23, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARK R. POPE,

      Defendant-Appellant.

No. 09-4150

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:08-cr-00303-DS-1)**

---

Parker Douglas, Assistant Federal Defender (Steven B. Killpack, Federal
Defender, with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Elizabeth D. Collery, Attorney, Appellate Section, Criminal Division, United
States Department of Justice, Washington, D.C. (Brett L. Tolman, United States
Attorney, and Diana Hagen and Carol A. Dain, Assistant United States Attorneys,
District of Utah; and Lanny A. Breuer, Assistant Attorney General, and Gary G.
Grindler, Deputy Assistant Attorney General, Washington, D.C., with her on the
brief), for Plaintiff-Appellee.

---

Before **TACHA** and **GORSUCH,** Circuit Judges, and **STAMP,** Senior District
Judge.[*]

---

**GORSUCH**, Circuit Judge.

---

    [*] Honorable Frederick P. Stamp, Senior District Court Judge, Northern
District of West Virginia, sitting by designation.

This case began when a grand jury indicted Mark Pope for violating 18 U.S.C. § 922(g)(9). That statute makes it a federal felony for a person previously convicted of a misdemeanor crime of domestic violence to possess a gun. In response to the indictment, Mr. Pope filed a motion to dismiss. While he admitted to being previously convicted of a domestic violence crime, and to possessing a gun, Mr. Pope pressed an affirmative defense that, he said, precluded his conviction. Because he possessed the gun in question only on the property where he was living and only to protect himself, others, or his property, he argued that the application of § 922(g)(9) to him would violate the Second Amendment. While the statute may be constitutional as applied to other situations, it is, he submitted, unconstitutional as applied to the facts of his case.

The district court denied Mr. Pope's motion to dismiss and today we affirm that decision. We do so without passing, one way or the other, on Mr. Pope's Second Amendment defense because an antecedent procedural problem lurks here. All the material facts on which Mr. Pope's motion to dismiss relies are outside the indictment, hotly disputed by the government, and intimately bound up in the question of Mr. Pope's guilt or innocence. Under these circumstances, Fed. R. Crim. P. 12(b)(2) and our precedent preclude the resolution of Mr. Pope's as-applied constitutional challenge before trial.

# I

The indictment in this case is a model of Spartan prose.  Count I, the only portion of the indictment still at issue, alleges simply that "[o]n or about August 14, 2007, in the Central Division of the District of Utah, Mark R. Pope, the defendant herein, having been convicted in any court of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(33), did knowingly possess in and affecting interstate commerce a firearm, that is, a .22 caliber High Standard revolver; all in violation of 18 U.S.C. § 922(g)(9)."  R. Vol. I at 8-9.

In response to this charge, Mr. Pope filed a motion to dismiss arguing that § 922(g)(9) is unconstitutional as applied to him.  Mr. Pope's motion sought to rely on the Supreme Court's decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), and its recognition of the Second Amendment's individual right to bear arms.  *See also McDonald v. City of Chicago, Illinois*, __ S. Ct. __, 2010 WL 2555188 (2010).  Mr. Pope readily acknowledged *Heller*'s *dictum* that its recognition of an individual right was not meant to upset "longstanding prohibitions on the possession of firearms by felons."  *Id.* at 2816-17; *see also McDonald*, ___ S. Ct. at ___, 2010 WL 2555188, at \*25; *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009).  But, while felons may be barred from possessing firearms, Mr. Pope argued, the Second Amendment is violated when misdemeanants are prevented from possessing firearms purely for the "protection of self, property and home."  R. Vol. I at 23.  *See generally In re*

- 3 -

*United States*, 578 F.3d 1195 (10th Cir. 2009) (Murphy, J., dissenting); *McCane*, 573 F.3d at 1047-50 (Tymkovich, J., concurring); *United States v. Skoien*, ___ F.3d ___, 2010 WL 2735747 (7th Cir. 2010) (en banc).

And this, he submitted, describes his situation exactly. While the indictment was silent about the reason for his possession, Mr. Pope provided an evidentiary proffer in an effort to fill the void. In his proffer, Mr. Pope claimed that, while he was living with friends, he and one of his dogs were attacked by a neighbor's dogs. In response, he walked to the neighbor's house carrying the handle of an ax (though, he stressed, without the blade) and confronted her. After the confrontation, the neighbor called the police to report the incident. When officers arrived at the home where Mr. Pope was living, they found him in the front yard with a pistol in his front pocket. Mr. Pope claimed the gun belonged to his wife and, consistent with *Heller*'s recognition that "the need for defense of self, family, and property is most acute" in "the home," 128 S. Ct. at 2817, he claimed that he had taken possession of his wife's gun for exactly these reasons. In these circumstances, he contended, any conviction under § 922(g)(9) would be unconstitutional and so the indictment against him had to be dismissed.

Opposing Mr. Pope's motion, the government argued that, as a general rule, motions to dismiss seeking to test the legal adequacy of an indictment must be analyzed solely on the basis of the factual allegations contained in the indictment. And, the government emphasized, none of the facts essential to Mr. Pope's as-

applied constitutional challenge could be found in the indictment. The government acknowledged that an exception to the general rule against resort to facts outside the indictment exists when the motion is based on agreed facts, the government offers no objection to the consideration of those facts, and the motion is capable of resolution as a matter of law. But, the government argued, this particular exception "is inapplicable here." R. Vol. I at 29. Indeed, the government proceeded to argue that the facts surrounding Mr. Pope's offense were very different from those he described. At trial, the government said it would show that (1) Mr. Pope was never attacked by the neighbor's dogs, and (2) Mr. Pope threatened the neighbor that, if he ever saw her dogs outside her yard, he would kill both them *and* her. And, the government seemed to suggest, if the district court did venture outside the indictment to consider the facts likely to be adduced at trial, these same facts would preclude the conclusion that § 922(g)(9) is unconstitutional as applied to this case because they show Mr. Pope wasn't seeking simply to protect "self, property, and home." R. Vol. I at 23.

The district court took the parties' dispute under advisement and soon issued a succinct order stating that "the Court hereby adopts the position of the United States and denies the Defendant's Motion to Dismiss." R. Vol. I at 49. From this, we understand the district court to have adopted both (1) the government's position that the motion wasn't ripe for resolution before trial, because deciding it would require resort to disputed facts outside the indictment;

and (2) the government's apparent additional view that, even if the motion could be resolved before trial, it would have to be decided against Mr. Pope on the merits.

After the district court's ruling, Mr. Pope opted to plead guilty and was sentenced. In agreeing to plead guilty, however, he reserved his right to appeal the district court's denial of his pre-plea motion to dismiss. Mr. Pope now exercises that reserved right before us.

II

We affirm. We do so not on the merits of the constitutional question but because we agree that Mr. Pope's motion to dismiss could not be appropriately resolved before trial. In reaching this holding, we first outline the legal principles that govern our analysis before turning to their application in this case.

A

The Federal Rules of Criminal Procedure encourage the pretrial resolution of a number of important, and even some potentially dispositive, matters. So, for example, parties must raise certain arguments before trial — such as those seeking the suppression of the evidence on which the prosecution relies — or risk waiving them. *See* Fed. R. Crim. P. 12(b)(3), (e). Other issues may be addressed by pretrial motion at a party's election. *See* Fed. R. Crim. P. 12(b)(2). But still other matters may not be raised by pretrial motion at all. *Id.*

With respect to this final category, Rule 12 authorizes the district court to resolve before trial only those motions "that the court can determine *without a trial of the general issue*." Fed. R. Crim. P. 12(b)(2) (emphasis added). In a criminal case, the "general issue" is "defined as evidence relevant to the question of guilt or innocence." *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (quotation marks omitted). Thus, the Supreme Court has instructed, Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969); *see also United States v. Knox*, 396 U.S. 77, 83, 83 n.7 (1969); *United States v. Mandujano*, 425 U.S. 564, 585 n.1 (1976) (Brennan, J., concurring). If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.

The reasons that have been offered for this longstanding rule are many and various. *See* 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 190, at 385 (4th ed. 2008) ("With slight alteration [Rule 12(b)(2)] has remained unchanged since the Rules were first adopted"); *id.* at 442 n.7 (discussing alteration of language in 1975). Perhaps most prominent among them is respect for the role of the jury. The jury is, of course, charged with determining the general issue of a defendant's guilt or innocence. Fact-finding by

the district court based on evidence that goes to this question can risk trespassing on territory reserved to the jury as the ultimate finder of fact in our criminal justice system. *See United States v. Fadel*, 844 F.2d 1425, 1430 (10th Cir. 1988); *United States v. King*, 581 F.2d 800, 801-02 (10th Cir. 1978); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452-53 (9th Cir. 1986); *see also* Wright & Leipold, *supra*, § 194, at 442 n.7 (noting that genesis of the rule was to prevent resolution of issues that belonged to the jury). But this is not the only rationale cited for the rule. Even when the court is ultimately responsible for deciding the merits of a legal defense, it is sometimes said evidence adduced at trial can provide a "more certain framework" for its analysis — particularly when it isn't clear before trial precisely what evidence will and won't be admissible. *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (holding that district court's void-for-vagueness determination "should be based only on the facts as they emerge at trial"). And, of course, it also disserves judicial economy to hold a separate "mini-trial"on a defense only to repeat the exercise with largely the same evidence a short time later at the trial itself. A pretrial hearing in these circumstances may wind up being little more than a "dress rehearsal[]" that is not only needlessly repetitive but that might also facilitate an end-run around the limited discovery rules governing criminal prosecutions. *Fadel*, 844 F.2d at 1430; *see* Fed. R. Crim. P. 16(a), 26.2; 18 U.S.C. § 3500. After all, unlike their civil counterparts, criminal proceedings have no extensive discovery and

- 8 -

summary judgment procedures requiring both sides to lay their evidentiary cards on the table before trial. *See, e.g.*, *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000). Rule 12(b)(2), it is said, helps draw and police this distinction between civil and criminal procedure.

Accepting that Rule 12(b)(2) has long governed, and continues to govern, federal criminal proceedings, what motions might be said to be susceptible to pretrial determination without implicating what the Rule calls "trial of the general issue"? They fall into two general categories. First, some pretrial motions simply do not implicate the general issue at all. These include motions related to what evidence might be admitted at trial (*e.g.*, suppression motions), or the conduct of and preparation for trial (*e.g.*, joinder of offenses and codefendants, venue, bills of particulars, and discovery), for example. *See* Wright & Leipold, *supra*, § 191, at 390-92. They also include other motions that seek and result in dismissal of the case altogether but that can be decided, at least in the circumstances of the case at hand, without deciding any disputed questions of fact about the circumstances of the alleged crime (*e.g.*, some speedy trial violations). *See id*. So long as a motion implicates "fact[s] peculiar to the motion," and not facts surrounding the question of guilt or innocence, it can't be said to implicate the general issue. *Covington*, 395 U.S. at 60. *See also* Rule 12(d) (requiring district court to state its "essential findings on the record"). Motions of this kind, however, may involve only the taking of evidence that is "entirely segregable

from the evidence to be presented at trial." *United States v. Barletta*, 644 F.2d 50, 58 (1st Cir. 1981) .

Second, other motions may implicate the general issue, but they present themselves for resolution before trial because they don't require a *trial* of the general issue. So, for example, a court may always ask "whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence" and dismiss the indictment if its allegations fail that standard. *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006). Even if this question can be fairly said to implicate the general issue, it doesn't require a *trial* because it focuses solely on the facts alleged in the indictment and their *legal* adequacy. *See United States v. Sampson*, 371 U.S. 75, 78-80 (1962). Of course and likewise, courts may entertain motions that require it to answer only pure questions of law. *See, e.g., Covington*, 395 U.S. at 60; *Serfass v. United States*, 420 U.S. 377, 382 (1975); *see also* Wright & Leipold, *supra*, § 191, at 392-93. And, we have held, courts may entertain even motions to dismiss that require resort to facts outside the indictment and bearing on the general issue in the "limited circumstances" where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).

We have explained that dismissals under this latter rubric are the "rare exception." *Id.*; *see also Todd*, 446 F.3d at 1068. This is because they are "not made on account of a lack of evidence to support the government's case" or, put differently, the government's refusal to come forward with evidence to support its case in the face of a defendant who has presented his own proof. *Todd*, 446 F.3d at 1068. And this is because, again, the parties to a criminal proceeding have comparatively few obligations to present their evidence to their adversaries prior to trial; Rule 12 is not a parallel to civil summary judgment procedures. Instead, dismissals under the rubric we set forth in *Hall* can be had only when and "because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." *Todd*, 446 F.3d at 1068. The extra-indictment evidence thus must be undisputed in the sense that it is *agreed* to by the parties — neither side having expressed any objection to its consideration or any objection to its completeness and accuracy. Indeed, we have held even *latent* factual disputes over circumstances surrounding the commission of the alleged offense can sometimes prevent pretrial determination of a defense. *See Reed*, 114 F.3d at 1070 (rejecting the district court's pretrial determination of an as-applied challenge based upon a mere proffer of facts, even when the opposing party didn't object to that proffer). To warrant dismissal, it must be clear from the parties' *agreed* representations about the facts surrounding the

commission of the alleged offense that a trial of the general issue would serve no purpose.

B

Applying these principles to the case before us confirms that Mr. Pope's motion to dismiss isn't one eligible for resolution before trial because it implicates the general issue *and* requires trial.[1]

To begin, the general issue. Mr. Pope's motion doesn't seek dismissal on the basis of issues collateral to the question of his guilt or innocence. His is no motion based on a Speedy Trial Act violation or seeking the suppression of evidence, for example. Instead, Mr. Pope seeks to vindicate an affirmative defense bearing directly on his guilt or innocence, arguing that he cannot be guilty of the charged offense by dint of the Constitution's guarantees. Proving as much is the whole point of Mr. Pope's motion to dismiss. Furthermore, the "facts surrounding the commission of [Mr. Pope's] alleged offense," *Covington*, 395 U.S. at 60, are hardly irrelevant to deciding his defense: the who, what, where, when, why, and how of his firearm possession *will* determine the validity of his

---

[1] The parties have not identified any precedent in this court concerning the appropriate standard of appellate review for assessing a district court's Rule 12(b)(2) decision denying a pretrial motion to dismiss. Because it doesn't matter to the outcome of this case, we review this appeal *de novo*, the most favorable standard potentially available to Mr. Pope, and do so without holding that standard necessarily applicable to future disputes. As a matter of judicial restraint, we generally leave the resolution of questions of law to cases where they make a difference. *See, e.g., Hydro Res., Inc. v. Envtl. Prot. Agency*, ___ F.3d ___, 2010 WL 2376163, at *12 n.10 (10th Cir. 2010) (en banc).

as-applied challenge. He does not claim, after all, that § 922(g)(9) is facially unconstitutional on any set of facts, but instead claims only that it's unconstitutional as applied to his particular circumstances. In other words, he contends the statute is unconstitutional only in light of the "facts surrounding the commission of the alleged offense," *Covington*, 395 U.S. at 60 — the very facts a court may *not* consider before trial.

Mr. Pope's motion likewise requires a *trial* of the general issue. This is because it does not rest on a pure question of law, the facts charged in the indictment itself, or agreed extra-indictment facts. Instead, Mr. Pope concedes that, to prevail on his motion, certain disputed facts outside the indictment must be found in his favor, facts that allegedly show he retained a gun only on his property and only to protect himself, others, or his home. We must ask whether he was threatened by the neighbor's dogs (as he alleges) or not (as the government contends). And we must ask whether he was seeking simply to protect himself, others, and his place of residence from dangerous dogs (as he suggests) or whether he also threatened to injure the dogs' owner and did so without provocation (as the government suggests). The resolution of these contested facts is essential to the resolution of his affirmative defense. In all these ways, Mr. Pope's affirmative defense implicates *trial* of the general issue. *See United States v. La Cock*, 366 F.3d 883, 889 (10th Cir. 2004) (holding that "a

- 13 -

contested affirmative defense" generally "should be resolved at trial, not during a motion to dismiss the indictment").

This is not to say that affirmative defenses are categorically ineligible for pretrial resolution. Even among affirmative defenses that implicate the general issue of the defendant's guilt or innocence, not all require a *trial* of the general issue: some involve only a pure question of law and others implicate only facts found in the indictment or facts agreed to by the parties. *See, e.g.*, *United States v. Poulin*, 588 F. Supp. 2d 58, 61 (D. Me. 2008). At the same time, though, we must acknowledge, as many have before us, that many affirmative defenses *do* depend on the resolution of disputed facts bearing on the question of guilt or innocence. This is just another in a long line of cases recognizing as much. *See, e.g.*, *Knox*, 396 U.S. at 83-84 (affirmative defense of duress must be determined at trial because it implicates trial of the general issue); *Reed*, 114 F.3d at 1070-71 (vagueness); *United States v. Tafoya*, 376 F. Supp. 2d 1257, 1260 (D.N.M. 2005) (sufficiency of the evidence); *La Cock*, 366 F.3d at 889 (affirmative defense that device was not designed as a weapon within the meaning of the statute); *Fadel*, 844 F.2d at 1430-31 (entrapment); *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (affirmative defense that crime was committed as a public authority); *Poulin*, 588 F. Supp. 2d at 60-62 (as-applied constitutional challenge).

To all this, Mr. Pope offers two replies meriting mention. First, he says, the government never objected to the district court's consideration of facts

- 14 -

outside the indictment.  Mr. Pope stresses that the government offered its own competing facts and, he suggests, this amounted to a "tacit[]" acquiescence to Mr. Pope's wish to look to facts outside the indictment.  Reply Br. at 1.  In fact, however, the government expressly noted that a motion challenging the indictment's ability to state a criminal violation should normally be decided "solely on the basis of the allegations made on [the indictment's] face, and such allegations are to be taken as true."  R. Vol. I at 29 (quoting *Hall*, 20 F.3d at 1087); *see also* Gov't App. Br. at 27-28; *supra* Section I.  The government then argued that it is a "rare exception" when facts outside the indictment may be considered; that this exception exists only when the motion is based on "undisputed facts" agreed to by the parties; and that this "exception is inapplicable here."  R. Vol. I at 29 (quoting *Hall*, 20 F.3d at 1088); *see also supra* Section I.  Plainly, the government *did* contest the district court's ability to resolve Mr. Pope's motion on the basis of facts outside his indictment.  While the government proceeded to offer its own (disputed) extra-indictment facts and suggest that Mr. Pope's motion would also fail in light of them (something it again does on appeal), this only serves to highlight that Mr. Pope's motion lacks the sort of genuinely undisputed factual record that might render it amenable to pretrial resolution under Rule 12(b)(2).

Second, Mr. Pope submits that at least *some* of the extra-indictment facts he presented in connection with his motion to dismiss in the district court were

- 15 -

agreed to by the parties, and he invites us to decide his case based on them. He says, for example, that it's agreed (1) he wasn't carrying the gun (only an ax handle) when he spoke to the owner of the dogs; (2) he possessed the gun only on the property where he was then living; and (3) his reason for carrying the gun was for the protection of himself and his property. But, as it happens, the government has actively disputed (3), never agreed to (2), and contested the significance of (1) and (2). The hard reality of the case for Mr. Pope is that the material facts that might shed light on whether his gun possession was really and only for the defense of self, others, or property are outside the indictment and fiercely disputed. In these circumstances, we can hardly say it was error for the district court to deny his pre-trial motion to dismiss.[2]

* * *

[2] On appeal, the government argues that the agreed extra-indictment facts actually undercut Mr. Pope's Second Amendment argument, pointing to certain (unhelpful to his cause) factual admissions Mr. Pope made in his plea agreement. Mr. Pope replies that the plea agreement came after the denial of his motion to dismiss, so the agreement's factual recitations were not "before the district court when it issued the order denying Mr. Pope's motion to dismiss the indictment," Reply Br. at 3; and, he argues, this court generally (if not always) confines its review of a district court's ruling to the materials that were before that court at the time of its decision. This dispute, however, makes no difference to our outcome: we need not and do not rest anything on the plea agreement or its recitation of facts in reaching our decision today.

Separately, Mr. Pope's motion for leave to withdraw his earlier motion to strike portions of the government's brief is granted. While Mr. Pope's motions were pending, the clerk's office permitted the government's brief to remain filed under seal. We now direct the clerk's office to lift the seal and make the government's brief part of the public record.

The district court's denial of Mr. Pope's motion to dismiss his indictment is

*Affirmed.*